UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REGINALD McGAUGHY,

                              Plaintiff,

v.                                                    9:19-cv-1114
                                                      (TJM/TWD)

KEITH McDONALD,

                              Defendant.[1]

_____

APPEARANCES:                                OF COUNSEL:

REGINALD McGAUGHY
Plaintiff, *pro se*
09-R-0962
Cape Vincent Correctional Facility
Rte. 12E
PO Box 739
Cape Vincent, NY 13618

HON. LETITIA JAMES                          LAUREN ROSE EVERSLEY, ESQ.
Attorney General for the State of New York  Assistant Attorney General
Counsel for Defendant
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        Reginald McGaughy ("Plaintiff"), an inmate in the custody of the New York State

Department of Corrections and Supervision ("DOCCS"), commenced this *pro se* action pursuant

to 42 U.S.C. § 1983 regarding alleged violations of his constitutional rights at Bare Hill

_____

[1]  Defendant was sued solely as "McDonald" by Plaintiff.  The Clerk is directed to amend the
docket to reflect the full name of Defendant Keith McDonald.

Correctional Facility ("Bare Hill").  (Dkt. No. 1.)  The Honorable Thomas J. McAvoy, United

States Senior District Judge, reviewed the complaint in accordance with 28 U.S.C. § 1915 and

found only Plaintiff's Eighth Amendment excessive force claim against Keith McDonald

("Defendant") survived initial review and required a response.  (Dkt. No. 7.)

Defendant now moves for summary judgment, *in lieu* of an answer, pursuant to Rule 56

of the Federal Rules of Civil Procedure because Plaintiff failed to exhaust his administrative

remedies.  (Dkt. No. 14.)  Plaintiff has responded to the motion.  (Dkt. No. 18.)  For the reasons

explained below, the Court recommends granting Defendant's motion.

## I.     BACKGROUND

On March 16, 2019, Plaintiff claims he was told to "pack up" for a move.  (Dkt. No. 1 at

8.[2])  According to Plaintiff, McDonald instructed Plaintiff to "get on the wall for a pat frisk" and

as Plaintiff "was putting [his] hands on the wall, [McDonald] smacked [him] in the back of [his]

head."  *Id*.  During the search, McDonald "kicked [Plaintiff's] feet from under [him]" and then

"pulled the pin for the response team."  *Id*.  When the response team arrived, the unidentified

individuals that comprised that team assaulted Plaintiff and directed racial slurs towards him.  *Id*.

Plaintiff was then transported to the Special Housing Unit ("SHU") by a sergeant who also

directed racial slurs at him.  *Id*. at 10.  Upon arriving at the SHU, Plaintiff was assaulted again by

six unidentified corrections officers.  *Id*.  Plaintiff was threatened not to report his injuries to a

nurse or otherwise report the assault.  *Id*.  On March 17, 2019, Plaintiff was interviewed by a

lieutenant about the use of force incident the day before.  *Id*. at 8-9.  On March 25, 2019,

---

[2]  Page references to documents identified by docket number are to the page number assigned by the Court's CM/ECF electronic docket system.  Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.  Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff was transferred to Upstate Correctional Facility ("Upstate"). (Dkt. No. 14-3 at ¶ 10.) He commenced this action on or about September 10, 2019. (Dkt. No. 1.)

Defendant seeks summary judgment based solely on Plaintiff's failure to exhaust available administrative remedies prior to commencing this action. (Dkt. No. 14-1.) In support of his motion, Defendant offers evidence that Plaintiff filed a grievance at Upstate (Grievance No. UST-64896-19) dated April 1, 2019, regarding, *inter alia*, McDonald's alleged assault of Plaintiff on March 16, 2019, at Bare Hill. (Dkt. No. 14-2 at ¶ 6.[3]) That grievance was forwarded to the facility superintendent for a response. *Id.* at ¶ 7. The superintendent responded to the grievance in June of 2019. *Id.* at ¶ 8. Upstate, however, has no record of Plaintiff appealing the superintendent's decision to the Central Office Review Committee ("CORC"). (Dkt. No. 14-3 at ¶ 18.[4]) CORC likewise has no record of any appeal of Grievance No. UST-64896-19 being filed. (Dkt. No. 14-4 at ¶ 11.[5]) Lastly, Bare Hill has no record of any grievances relating to the alleged March 16, 2019, incident. (Dkt. No. 14-5 at ¶ 13.[6])

In his opposition submission, which is not verified, Plaintiff "admits" he did not appeal the superintendent's decision to CORC but contends his complaint "should not be dismissed because excessive force during a pat frisk did happen." (Dkt. No. 18 at 1-2.)

---

[3] A copy of Plaintiff's grievance packet for Grievance No. UST-64896-19 is attached as Exhibit A to the Declaration of Donna Wilcox, the Inmate Grievance Program ("IGP") Supervisor at Upstate. (Dkt. No. 14-3 at 6-11.)

[4] Upon review of the records maintained at Upstate, Wilson states there is no record that Plaintiff appealed the superintendent's decision to CORC. (Dkt. No. 14-3 at ¶¶ 14, 17, 18.)

[5] Rachel Seguin, the Assistant Director for the IGP at DOCCS and custodian of records maintained by CORC, declares that upon review of the records maintained by CORC in the regular course of business, Plaintiff did not appeal Grievance No. UST-64896-19 to CORC. (Dkt. No. 14-4 at ¶¶ 1, 9-12.) She further submits Plaintiff did not file an appeal to CORC of any grievance relating to his allegations in this action. *Id.* at ¶ 13.

[6] Upon review of the records maintained at Bare Hill, Cheryl Lamore, the Bare Hill IGP Supervisor, states Plaintiff did not file any grievances concerning McDonald's alleged assault. (Dkt. No. 14-5 at ¶¶ 1, 12-13.)

## II.      LEGAL STANDARD

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 & n.11 (1986).  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

A party opposing summary judgment is required to submit admissible evidence.  *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and quotation marks omitted).  A verified complaint, as Plaintiff has filed in

this case, is treated as an affidavit.  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A

verified complaint is to be treated as an affidavit . . . and therefore will be considered in

determining whether material issues of fact exist . . . .") (citations omitted).

Where a party is proceeding *pro se*, the court must "read [the *pro se* party's] supporting

papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."

*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  However, "a *pro se* party's 'bald assertion,'

unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Cole*

*v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)

(citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).[7]

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.    Legal Standard

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required for "all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516,

532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

To properly exhaust administrative remedies under the PLRA, inmates are required to

complete the administrative review process in accordance with the rules applicable to the

---

[7]  The Court will provide Plaintiff with copies of all unpublished decisions cited herein in
accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)
(per curiam).

institution to which they are confined. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

In New York State prisons, DOCCS has a well-established three-step IGP. *See* 7 N.Y.C.R.R. § 701.5. However, special procedures are used when, as in this case, the grievance involves staff misconduct. *See id*. § 701.8. A grievance alleging staff misconduct, once it is given a number and recorded, must be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days. *Id*. § 701.8(b), (f). If the grievant wishes to appeal the superintendent's decision to CORC, he must do so within seven days of receipt of the decision. *Id*. § 701.8(h). Thereafter, CORC must render a written decision within thirty days of receipt of the appeal. *Id*. § 701.8(i); *see id*. § 701.5(d)(3)(ii).

At each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal to 'the next step,'" assuming there is a "next step" in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281(TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

6

merits)." (quotation marks and citations omitted)).  Nevertheless, the PLRA also "contains its

own, textual exception to mandatory exhaustion."  *Ross v. Blake*, 136 S. Ct. 1850, 1854-55

(2016).  More specifically, Section 1997e(a) provides that only those administrative remedies

that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at

1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies."

(quotation marks and brackets omitted)).  In the PLRA context, the Supreme Court has

determined "availability" means "an inmate is required to exhaust those, but only those,

grievance procedures that are capable of use to obtain some relief for the action complained of."

*Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find internal

administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First,

"an administrative procedure is unavailable when (despite what regulations or guidance materials

may promise) it operates as a simple dead end—with officers unable or consistently unwilling to

provide any relief to aggrieved inmates."  *Id*. at 1859.  "Next, an administrative scheme might be

so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Finally, an administrative

remedy is not "available" when "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.[8]

Because non-exhaustion is an affirmative defense, the defendant bears the burden of

showing that an inmate has failed to satisfy the exhaustion requirements.  *See Jones*, 549 U.S. at

216.  The plaintiff must then establish the IGP grievance procedure was unavailable to him under

---

[8]  In *Williams v. Correction Officer Priatno*, the Second Circuit noted "the three circumstances
discussed in *Ross* do not appear to be exhaustive."  *Williams v. Correction Officer Priatno*, 829
F.3d 118, 123 n.2 (2d Cir. 2016).  The illustrations of unavailability in *Ross* nonetheless guide
the Court's inquiry.  *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100,
at *4 (S.D.N.Y. July 19, 2016).

*Ross*. *See Adams v. O'Hara*, No. 9:16-CV-0527 (GTS/ATB), 2019 WL 652409, at *4 (N.D.N.Y. Feb. 15, 2019).

Whether a plaintiff has exhausted his administrative remedies is a question of law. *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment. *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Mckinney v. Prack*, 170 F. Supp. 3d 510, 514 (W.D.N.Y. 2016) (granting a motion for summary judgment made *in lieu* of an answer where inmate failed to exhaust administrative remedies)).

### B.   Analysis

The record before the Court establishes Plaintiff filed Grievance No. UST-64896-19, dated April 1, 2019, which alleged, *inter alia*, that on March 16, 2019, Defendant McDonald used excessive force against him during a pat frisk at Bare Hill. (Dkt. No. 14-2 at ¶ 6.) Consistent with the policy for grievances involving staff harassment, the grievance was forwarded directly to the facility superintendent for consideration. *Id.* at ¶ 7. The superintendent denied Plaintiff's grievance on June 7, 2019, finding no misconduct by staff. *Id.* at ¶ 8. There is no record, however, of Plaintiff appealing the superintendent's decision to CORC. *Id.* at ¶ 9; *see also* Dkt. No. 18 at 1, 2 ("I admit I didn't appeal to 'CORC.'"). Plaintiff commenced this action on or about September 10, 2019. (Dkt. No. 1.)

Here, it is undisputed Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. *See Bennett v. Fletcher*, No. 9:17-CV-849 (GTS/CFH), 2020 WL 872491, at *7 (N.D.N.Y. Jan. 16, 2020) (citing *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.")), *report-recommendation adopted*

8

*by* 2020 WL 871156 (N.D.N.Y. Feb. 21, 2020); *see, e.g.*, *Hamm v. Farney*, No. 9:13-CV-1302

(BKS/CFH), 2017 WL 8894723, at *5 (N.D.N.Y. Dec. 22, 2017), *report and recommendation*

*adopted by* 2018 WL 922149 (N.D.N.Y. Feb. 16, 2018) (dismissing the plaintiff's complaint for

failure to exhaust where the IGP supervisor and DOCCS Assistant Director of IGP both declared

that "a search of the DOCCS database confirmed plaintiff's original grievance, as well as an

appeal to the superintendent, but produced no record of an appeal to CORC"). Accordingly, the

Court finds Defendant has satisfied his burden of demonstrating Plaintiff failed to exhaust his

administrative remedies prior to commencing this action.

The Court also finds Plaintiff has failed to submit nonconclusory evidence sufficient to

raise a material issue of fact on the question of availability of the IGP under *Ross*. Plaintiff's

assertion that his complaint "should not be dismissed because excessive force during a pat frisk

did happen" is without merit. (*See* Dkt. No. 18.) As discussed above, excessive force claims are

subject to the PLRA's exhaustion requirement. *Porter*, 534 U.S. at 532. Further, while Plaintiff

claims he was "threat[ened] not to report [his] injuries" and contends he did not file a grievance

at Bare Hill because he "was in fear of retaliation," it does not explain or excuse Plaintiff's

failure to appeal Grievance No. UST-64896-19, which was filed at Upstate, to CORC. (Dkt.

Nos. 1 at 8, 18 at 2.) Moreover, there is no evidence in the record showing the grievance

procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence to establish an

issue of fact as to unavailability due to an "opaque" administrate scheme. Because Plaintiff has

produced no evidence showing the administrative process was unavailable to him during the time

within which he was required to appeal Grievance No. UST-614893-19 to CORC, the Court

finds Plaintiff has not met his burden of demonstrating his administrative remedies were

unavailable to him under *Ross* and concludes Plaintiff did not exhaust his Eighth Amendment excessive force claim against McDonald as required by the PLRA.

Therefore, the Court recommends granting the motion for summary judgment on exhaustion grounds.

It is appropriate for the Court to dismiss a claim without prejudice for failing to exhaust administrative remedies "[i]f the time permitted for pursuing administrative remedies has not expired." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (quoting *Snider*, 199 F.3d at 111-12). However, the Court may dismiss the claim with prejudice if the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Id.* at 88. Here, more than a year has passed since Plaintiff should have appealed the grievance to CORC. As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's Eighth Amendment excessive force claim against McDonald with prejudice. *See, e.g.*, *Castineiras v. Helms*, No. 9:17- CV-1084 (BKS/ATB), 2019 WL 2870300, at *5-6 (N.D.N.Y. June 6, 2019).

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 14) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's Eighth Amendment excessive force claim against Defendant McDonald be **DISMISSED WITH PREJUDICE**; and it if further

**ORDERED** that the Clerk is directed to amend the docket to reflect the full name of Defendant Keith McDonald; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated:  June 26, 2020
            Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[9]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone, New
York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York, New
York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

**\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary judgment
and dismissing the amended complaint, and United States
Magistrate Judge James C. Francis IV having issued a report
and recommendation, dated August 20, 1999, recommending
that the motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this Court,
dated August 28, 1999, stating that plaintiff does "not contest
the dismissal of this action", it is

ORDERED that the attached report and recommendation of
United States Magistrate Judge James C. Francis IV, dated
August 20, 1999, is adopted in its entirety; and it is further

ORDERED that defendant Pflueger's motion for summary
judgment is granted, and the amended complaint is dismissed;
and it is further

ORDERED that the Clerk of the Court shall enter judgment
accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42 U.S.C.
§ 1983. Mr. Cole alleges that the defendant Richard Pflueger,
a corrections officer, violated his First Amendment rights
by refusing to allow him to attend religious services. The
defendant now moves for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the defendant's
motion be granted.

*Background*

During the relevant time period, Mr. Cole was an inmate
in the custody the New York State Department of
Correctional Services ("DOCS"), incarcerated at the Green
Haven Correctional Facility. (First Amended Complaint
("Am.Compl.") ¶ 3). From June 21, 1993 to July 15, 1993, the
plaintiff was in keeplock because of an altercation with prison
guards. (Am.Compl.¶¶ 17–25). An inmate in keeplock is
confined to his cell for twenty-three hours a day with one hour
for recreation. (Affidavit of Anthony Annucci dated Dec. 1,
1994 ¶ 5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶ 3).
Permission is granted unless prison officials determine that
the inmate's presence at the service would create a threat to
the safety of employees or other inmates. (Schneider Aff. ¶
3). The standard procedure at Green Haven is for the captain's
office to review all requests by inmates in keeplock to attend
religious services. (Schneider Aff. ¶ 3). Written approval is
provided to the inmate if authorization is granted. (Affidavit
of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.")
¶ 5). The inmate must then present the appropriate form to
the gate officer before being released to attend the services.
(Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request
to attend the Muslim services on July 2, 1993. (Request
to Attend Scheduled Religious Services by Keep–Locked
Inmate dated June 28, 1993 ("Request to Attend Services"),

attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at \*3

(S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se'* s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

### B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not

permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

[1]    In light of this finding, there is no need to consider the defendant's qualified immunity argument.

### *Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,

v.

G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)

|

Signed January 9, 2016

|

Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN, New York State Attorney General, OF COUNSEL: CHRISTOPHER J. HUMMEL, ESQ., Assistant Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by *pro se* plaintiff Terrell Eleby against three individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), one of whom has since been dismissed from the action, pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that two of the defendants assaulted him in violation of his Eighth Amendment rights, and the third defendant violated his Fourteenth Amendment rights by issuing an allegedly false misbehavior report against him and confining him in the special housing unit ("SHU") at the prison facility in which he was housed.

Currently pending before the court is a motion brought by the remaining two defendants seeking the entry of summary judgment in their favor based upon plaintiff's alleged failure to exhaust available administrative remedies before filing suit. For the reasons set forth below, I recommend that the defendants' motion be granted.

I. BACKGROUND [1]

[1]  In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff is a prison inmate currently held in the custody of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although plaintiff is now confined elsewhere, at the times relevant to this action he was housed in the Auburn Correctional Facility ("Auburn") located in Auburn, New York. *Id.* at 18.

In his complaint, plaintiff alleges that on January 14, 2015, he was waiting in one of Auburn's hospital dormitory rooms to be escorted to an outside facility for a medical examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At approximately 10:00AM, defendants Smith and Vevone, both of whom are corrections officers, arrived at plaintiff's room to escort him on the medical trip. Dkt. No. 1 at 4. While plaintiff was attempting to remove his clothes for a mandatory strip search, defendant Smith "violently and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2 at 58. According to plaintiff, both defendants Smith and Vevone "jumped on [his] back," and defendant Smith punched him repeatedly in the eye, head, neck, back, and ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five minutes Sergeant Cudla, who is not a named defendant in the action, arrived at plaintiff's dorm, physically intervened, and ordered defendants Smith and Vevone to cease the assault and leave the room. Dkt. No. 1 at 4-5; Dkt. No. 29-2 at 58-59, 64. As a result of the alleged assault, plaintiff suffered various injuries, including a bloody and swollen eye, swelling and redness to his neck, and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and Vevone issued plaintiff a misbehavior report accusing him of violating six prison rules. Dkt. No. 22 at 9; Dkt. No. 29-2 at 72. Following a superintendent's hearing to address the charges, plaintiff was found guilty on four of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at 72. As a result of that finding, plaintiff was sentenced to serve thirty days of disciplinary SHU confinement, with a corresponding loss of commissary, package, and telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at 73-72.

II. PROCEDURAL HISTORY

**Eleby v. Smith, Not Reported in Fed. Supp. (2017)**

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 16 of 78

2017 WL 986123

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

[2]    Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III. DISCUSSION

A. Legal Standard Governing Summary Judgment
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. Plaintiff's Exhaustion of Administrative Remedies
**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516,

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, —— Fed.Appx. ——, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

[3]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

[4]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

[5]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. *Id.* at 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can —and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only

2017 WL 986123

those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross,* 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross,* 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross,* the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross,* 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

[6]     According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams,* 829 F.3d at 123 n.2.

### 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January

22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

[7]     Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

[8]     In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano,* 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler,* 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See* Dabney, 604 Fed.Appx. at 3 ("The IGP also has an expedited process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also* Lopez v. Bushey, No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g.,* McCoy v. Goord, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

[9]  In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, Terry, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See* Giannullo v. City of N.Y., 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. Hayes, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g.,* Goodson v. Silver, No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

2017 WL 986123

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[10]   If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 986123

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 652409
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert ADAMS, III, Plaintiff,
v.
David O'HARA, Corr. Officer, Auburn Corr.
Fac.; K. Kirkwood, Corr. Officer, Auburn Corr.
Fac.; C. Curtis, Corr. Officer, Auburn Corr.
Fac.; L. Seery, Corr. Officer, Auburn Corr.
Fac.; P. Dilallo, Corr. Officer, Auburn Corr.
Fac.; and S. Walshvelo, Corr. Serg., Auburn
Corr. Fac., a/k/a S. Walshevo, Defendants.

9:16-CV-0527 (GTS/ATB)
|
Signed 02/15/2019

**Attorneys and Law Firms**

OF COUNSEL: NOLAN J. LAFLER, ESQ., BLITMAN
& KING LLP, 443 North Franklin Street, Franklin Center,
Suite 300, Syracuse, NY 13204-1415, Pro Bono Counsel for
Plaintiff.

HON. LETITIA A. JAMES, OF COUNSEL: DENISE P.
BUCKLEY, ESQ., KONSTANDINOS D. LERIS, ESQ.,
Assistants Attorney General, Attorney General for the State
of New York, The Capitol, Albany, NY 12224, Counsel for
Defendants.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** The trial in this prisoner civil rights action, filed
*pro se* by Robert Adams, III ("Plaintiff") pursuant to 42
U.S.C. § 1983, began with an evidentiary hearing before the
undersigned on February 12, 2019, regarding the affirmative
defense of the six above-captioned correctional employees
("Defendants") that Plaintiff failed to exhaust his available
administrative remedies, before filing this action on May 4,
2016, as required by the Prison Litigation Reform Act. At the
hearing, documentary evidence was admitted, and testimony
was taken of Plaintiff as well as Defendants' three witness
(Auburn Correctional Facility Lieutenant Timothy C. Abate,
Auburn Correctional Facility Inmate Grievance Program
Supervisor Cheryl Parmiter, and New York State Department

of Corrections and Community Supervisor Inmate Grievance
Program Assistant Director Rachael Seguin), whom Plaintiff
was able to cross-examine through *pro bono* trial counsel.
At the conclusion of the hearing, the Court indicated that a
written decision would follow. This is that written decision.
For the reasons stated below, Plaintiff's Second Amended
Complaint is dismissed because of his failure to exhaust his
available administrative remedies before filing this action.

**I. RELEVANT LEGAL STANDARD**
The Prison Litigation Reform Act of 1995 ("PLRA") requires
that prisoners who bring suit in federal court must first
exhaust their available administrative remedies: "No action
shall be brought with respect to prison conditions under §
1983 ... by a prisoner confined in any jail, prison, or other
correctional facility until such administrative remedies as are
available are exhausted." 42 U.S.C. § 1997e.

The PLRA was enacted "to reduce the quantity and improve
the quality of prisoner suits" by "afford[ing] corrections
officials time and opportunity to address complaints internally
before allowing the initiation of a federal case." *Porter
v. Nussle*, 534 U.S. 516, 524-25 (2002). In this regard,
exhaustion serves two main purposes. First, it protects
"administrative agency authority" by giving the agency "an
opportunity to correct its own mistakes with respect to the
programs it administers before it is haled into federal court,
and it discourages disregard of the agency's procedures."
*Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion
promotes efficiency because (a) "[c]laims generally can be
resolved much more quickly and economically in proceedings
before an agency than in litigation in federal court," and (b)
"even where a controversy survives administrative review,
exhaustion of the administrative procedure may produce
a useful record for subsequent judicial consideration."
*Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion
requirement applies to all inmate suits about prison life,
whether they involve general circumstances or particular
episodes, and whether they allege excessive force or some
other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State
Department of Corrections and Community Supervision
("DOCCS") has made available a well-established inmate
grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the
DOCCS Inmate Grievance Program ("IGP") involves the
following three-step procedure for the filing of grievances. 7
N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7. [1]

1   *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

**\*2**  First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[2] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing.

2   The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.

Third, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by correction officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint in one of three ways: "in-house," by the New York State Office of the Inspector General, or by the New York State Police's Bureau of Criminal Investigation. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar special procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

These procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.[3] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.[4]

3   *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight,* 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight,* No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

4   7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases]; *cf.* 7 N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

**\*3**  It is important to note that, where an inmate does not know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed, he need not appeal that unprocessed grievance, because the regulatory scheme advising him of that right is too opaque. *See Williams v. Corr. Officer Priatno,* 829 F.3d 118, 126 (2d Cir. 2016) (finding that, "even if Williams technically could have appealed his [unprocesseed] grievance, we conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that ... no reasonable prisoner can use' [it pursuant to *Ross v. Blake,* 136 S. Ct. 1850 (2016) ]").

It is also important to note that DOCCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

> A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

> B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

> C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford,* 548 U.S. at 93; *Porter,* 534 U.S. at 524; *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. This is because certain exceptions exist to the exhaustion requirement.

In particularly, in 2004, in *Hemphill v. State of New York,* the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord, Ruggiero,* 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may

have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

**\*4** However, in 2016, in *Ross v. Blake,* the Supreme Court abrogated *Hemphill*'s third prong and effectively enveloped its second prong within its first prong. *Ross v. Blake,* 136 S. Ct. 1850, 1857 (2016). More specifically, under *Ross,* any inquiry that previously would have been considered under the second or third prongs of *Hemphill* is now considered entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *Ross,* 136 S. Ct. at 1858. This is because, the Supreme Court explained, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id.* In particular, 42 U.S.C. § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. *Id.* In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (quotation marks omitted).

To guide courts in this new analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross,* 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a

jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of providing that a prisoner has failed to exhaust his available administrative remedies. [5] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability. [6] As a result, practically speaking, while the burden of proving this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

[5]    *Id.* at *4 [citation omitted].

[6]    *Id.* at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, ... justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

## II. ANALYSIS

According to Plaintiff, he made three attempts to exhaust his available administrative remedies regarding the claims at issue in this action: (1) he filed a grievance at Auburn Correctional Facility ("Auburn C.F."); (2) he sent a letter of complaint to the New York State Office of the Inspector General ("Inspector General"); and (3) he filed a grievance at Southport Correctional Facility ("Southport C.F."). (Hrg. Tr.) [7]

[7]    The Court notes that Defendants' Answers timely asserted this affirmative defense. (Dkt. No. 101, at ¶ 18 [Defs.' Answer]; Dkt. No. 102, at ¶ 17 [Def. Walshvelo's Answer].)

### A. Plaintiff's First Attempt: Filing a Grievance at Auburn C.F.

**\*5**    The Court begins by finding that, if a correctional sergeant ripped up Plaintiff's grievance in front of him and threatened him not to further pursue the grievance as Plaintiff testified, sufficient grounds would exist to deem his administrative remedies to have been effectively rendered unavailable (despite his having continued to complain through avenues other than the grievance process at Auburn C.F.). This is because the unavailability inquiry is an objective one, [8] which survives the Supreme Court's decision in *Ross*. [9]

[8]    *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available.... Moreover, it should be pointed out that threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts.").

[9]    *See, e.g., Davis v. Doe*, 16-CV-0994, 2017 WL 8640829, at *4 (N.D.N.Y. Dec. 29, 2017) (Stewart, M.J.) (continuing to apply objective test after *Ross* ), *adopted*, 2018 WL 1582230 (N.D.N.Y. March 27, 2018) (D'Agostino, J.); *accord, Allen v. Graham*, 16-CV-0047, 2017 WL 9511168, at *6 (N.D.N.Y. Sept. 26, 2017) (Baxter, M.J.), *adopted*, 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017) (Suddaby, C.J.); *White v. Dishaw*, 14-CV-0002, 2017 WL 4325770, at *3 (N.D.N.Y. June 20, 2017) (Stewart, M.J.), *adopted*, 2017 WL 4326074 (N.D.N.Y. Sept. 27, 2017) (Sharpe, J.); *Cole v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 14-CV-0539, 2016 WL 5394752, at *10 (N.D.N.Y. Aug. 25, 2016) (Peebles, M.J.), *adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016) (Sannes, J.).

However, after carefully considering the matter, the Court finds that Plaintiff has failed to offer any credible evidence that, while he was at Auburn C.F. between January 20 and January 22, 2015, he submitted a grievance that a correctional employee either ripped up or threatened him not to continue to pursue. (*See generally* Hrg. Tr.) In finding that

Plaintiff's hearing testimony lacks credibility, the Court relies on the following eight facts: (1) Plaintiff's unconvincing demeanor and body language (including, but not limited to, his demeanor, tone of voice, facial expressions, and eye contact or lack thereof) during his testimony; [10] (2) the fact that Plaintiff contradicted himself by initially testifying at the hearing that he did not "actually observe" (but only "heard") the correction officer who picked up his grievance and then later testifying that he *did* see, and indeed made eye contact with, that correction officer (which is consistent with his prior deposition testimony); [11] (3) the inconsistency between Plaintiff's testimony that he had "[a]t least twice" filed grievances at Auburn C.F. "on the standard form for inmate grievances" (other than the grievance he purportedly submitted regarding the events of this litigation) and the unchallenged hearing testimony of IGP Supervisor Parmiter that Plaintiff *never* filed a grievance at Auburn C.F. (as well as Plaintiff's apparent stipulation that he never filed a grievance at Auburn C.F.); [12] (4) the inconsistency between Plaintiff's hearing testimony that an unidentified sergeant ripped up his first grievance about the assault (which stopped Plaintiff from filing another grievance at Auburn C.F.) and Plaintiff's assertion (in his letter of June 1, 2015) that the interception of his grievance about the assault occurred "on two separate occasions, by S.H.U. Supervisors"; [13] (5) the inconsistency between Plaintiff's hearing testimony that complaining about the individual who had threatened him would have been like "throwing a ball in the dark" because Plaintiff "wasn't able to identify [him]" [14] and the fact that Plaintiff knew the individual's (a) rank ("sergeant"), (b) hair color ("brown"), (c) approximate height ("5-10 to 6 foot"), (d) approximate weight ("two [hundred pounds] and some change, 220"), and most importantly (e) his *job assignment* (as the admitted supervisor of the correction officers who had allegedly assaulted Plaintiff); [15] (6) the fact that it is difficult to believe that Plaintiff would not have even *tried* to avail himself of the opportunity to place his sealed grievance directly through a slot into the locked mailbag (beyond the reach of correctional employees until it reaches the grievance office), given his belief that "keep[ing] everything inside quiet, on the hush" is "what they do up there [in S.H.U.] ... they want total control"; [16] (7) the fact that it is difficult to believe that a correctional sergeant would take off his name tag (which in itself would subject him to discipline) and then stand before an inmate's cell in SHU and tear up the inmate's grievance, knowing that the act would be captured on video and that the video would be retained for a period of two weeks (and even longer if the inmate complained of

the incident, in which case the video would be saved to a DVD); [17] and (8) the fact that it is difficult to believe that Plaintiff would write to the Inspector General on January 22, 2015, complaining about the intimidation he experienced two days before by Correction Officer "K. Deford" (who purportedly banged on Plaintiff's cell in the Mental Health Unit and stated, *inter alia*, "There's more where that came from. We're not finished w[ith] you yet") without mentioning that a sergeant purportedly ripped up Plaintiff's grievance earlier in the day on January 22. [18]

[10]    *Cf. Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996) ("[W]e must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says.").

[11]    (*Compare* Hrg. Tr. at 10, 21 [Plf.'s Hrg. Testimony] *with* Hrg. Tr. at 10, 22-23, 31-32 [Plf.'s Hrg. Testimony] *and* Hrg. Ex. D-5, at 127 [Plf.'s Depo. Tr.].)

[12]    (*Compare* Hrg. Tr. at 7-8 [Plf.'s Hrg. Testimony] *with* Hrg. Tr. at 55 [Parmiter Hrg. Testimony] *and* Hrg. Tr. at 4 [Tr. of Parties' Stipulations, in which Plaintiff's counsel stated, "We also understood that there was going to be testimony from the defense that the internal grievance files at Auburn were searched and that no record of a grievance from the plaintiff was located. We can stipulate to that issue as well."].)

[13]    (*Compare* Hrg. Tr. at 6-7, 24, 33 [Plf.'s Hrg. Testimony] *with* Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015].)

[14]    (Hrg. Tr. at 32 [Plf.'s Hrg. Testimony].)

[15]    (Hrg. Tr. at 11-14 [Plf.'s Hrg. Testimony, stating, *inter alia*, that the sergeant referred to the offending corrections officers as "my officers"]; Dkt. No. 138, Attach. 4, at ¶ 3 [Plf.'s Sworn Statement, identifying the individual as "the SHU Block Sgt." and stating that he referred to the offending correction officers as "my officers"]; Dkt. No. 138, Attach. 3, at ¶ 18 [Plf.'s Sworn Statement,

identifying the individual as "the SHU Block Sgt."].)

**16**    (Hrg. Tr. at 41-44, 38, 50 [Abate's Hrg. Testimony]; Hrg. Tr. at 33 [Plf.'s Hrg. Testimony].) The Court notes that, despite Lieutenant Abate's (somewhat vague) indication that a prisoner had to "hand[ ] [his grievance] to an officer," a fair reading of Lieutenant Abate's hearing testimony leads the Court to believe that, had he wanted to, Plaintiff could have "directly place[d]" his grievance "into the mailbag." (Hrg. Tr. at 42, 44, 50 [Abate's Hrg. Testimony].)

**17**    (Hrg. Tr. at 11-14, 32 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 39-41, 45-47 [Abate's Hrg. Testimony].)

**18**    (Hrg. Tr. at 28-31, 33-34 [Plf.'s Hrg. Testimony]; Hrg. Ex. P-1, at 7 [attaching page "5" of Plf.'s Letter to IG dated Jan. 22, 2015].)

### B. Plaintiff's Second Attempt: Sending a Letter of Complaint Directly to the Inspector General

**\*6**  Setting aside (for the sake of brevity) the fact that Plaintiff never obtained a referral from the superintendent before complaining to the Inspector General, no record evidence exists either that Plaintiff received a finding of substantiation by the Inspector General or that he appealed to CORC any finding of unsubstantiation by the Inspector General. (Hrg. Tr. at 15-17, 24-27, 29, 32-35 [Plf.'s Hrg. Testimony]; Hrg. Tr. at 58 [Seguin's Hrg. Testimony]; Hrg. Ex. D-1 [Record of Plf.'s Appeals to CORC]; D-5, at 129-32 [Plf.'s Depo. Tr.]; Hrg. Ex. P-1 [Plf.'s Letter to IG dated Jan. 22, 2015]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

As this Court has previously explained, "There is no exhaustion where an inmate complains directly to the Inspector General (i.e., instead of complaining to the superintendent and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d] ), the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that finding to CORC." *Smith v. Kelly*, 985 F. Supp.2d 275, 285 (N.D.N.Y. 2013) (Suddaby, J.) (collecting cases), *accord, McPherson v. Rogers*, 12-CV-0766, 2014 WL 675830, at \*7 (N.D.N.Y. Feb. 21, 2014) (report-recommendation of Peebles, M.J., adopted by Hurd, J.).

This is especially true after the Supreme Court's June 6, 2016, decision in *Ross. See, e.g., Kearney v. Gebo*, 15-CV-0253, 2017 WL 61951, at \*6 (N.D.N.Y. Jan. 4, 2017) ("As discussed above, however, the Supreme Court recently rejected the Second Circuit's 'special circumstances' exception to the PLRA's exhaustion requirement. Therefore, Plaintiff's complaint to the Inspector General, which does not constitute complete and proper exhaustion under New York's grievance scheme, cannot excuse his failure to exhaust."), *aff'd*, 713 F. App'x 39 (2d Cir. 2017) ("Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction did not render the ordinary inmate grievance procedures unavailable to him, such that he is excused from complying with those ordinary procedures. Their pendency did not preclude him from filing a grievance. Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted).

Analyzed through the framework set forth by *Ross*, here, the pending nature of the Inspector General's investigation in no way precluded Plaintiff from filing a grievance. *See Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017) ("[The pendency of] Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction ... did not preclude him from filing a grievance."). Nor did any assurance that Plaintiff received that the Inspector General was considering his complaint warrant a finding that prison administrators thwarted Plaintiff from pursuing the ordinary grievance procedures "through machination, misrepresentation, or intimidation." *See Kearney*, 713 F. App'x at 42 ("Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the ordinary grievance procedures through machination, misrepresentation, or intimidation.") (internal quotation marks omitted). To the contrary, Plaintiff swears that, after interviewing Plaintiff for an hour, the Inspector General's investigator instructed Plaintiff to contact the Inspector General if he experienced further issues or retaliation. (Hrg. Tr. at 15-17, 24-27, 29, 32-35 [Plf.'s Hrg. Testimony]; Dkt. No. 89, at ¶¶ 147-49 [Plf.'s Verified Second Am. Compl.].)

### C. Plaintiff's Third Attempt: Filing a Grievance at Southport C.F.

**\*7**  The grievance that Plaintiff filed at Southport C.F. was rejected as untimely, and there was no subsequent finding of mitigating circumstances to excuse that untimeliness. (Hrg.

Tr. at 19-20 [Plf.'s Hrg. Testimony]; Hrg. Ex. D-5, at 138-39 [Plf.'s Depo. Tr.]; Hrg. Ex. P-2 [Plf.'s Letter to Southport C.F. IGP Supervisor dated June 1, 2015]; Hrg. Ex. P-3 [Southport C.F. IGP Supervisor's Letter to Plf. dated June 2, 2015]; Hrg. Ex. D-1 [Record of Plf.'s Appeals to CORC].)

Filing an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies. *See Cole v. Miraflor*, 02-CV-9981, 2006 WL 457817, at *5 (S.D.N.Y. Feb. 23, 2006) ("Contrary to Cole's claim that administrative remedies were no longer available to him because DOCS did not find mitigating circumstances to excuse his late grievance, ... the very fact that DOCS' policies provide for the filing of late grievances where there are mitigating circumstances, demonstrates that administrative remedies were available to Plaintiff."), *aff'd*, 305 F. App'x 781 (2d Cir. 2009); *Galberth v. Durkin*, 14-CV-0115, 2016 WL 11480153, at *7 (N.D.N.Y. Apr. 21, 2016) (Baxter, M.J.) ("An inmate has not exhausted his administrative remedies when he has requested permission to file an untimely appeal and been denied by CORC due to an unpersuasive showing of mitigating circumstances."), *adopted*, 2016 WL 3910270 (N.D.N.Y. July 14, 2016) (Sannes, J.); *Burns v. Zwillinger*, 02-CV-5802, 2005 WL 323744, at *3 (S.D.N.Y. Feb. 9, 2005) ("Since [plaintiff] failed to present mitigating circumstances for his untimely appeal to the IGP Superintendent, the CORC, or this Court, [defendant's] motion to dismiss on the grounds that [plaintiff] failed to timely exhaust his administrative remedies is granted."); *Soto v. Belcher*, 339 F.Supp.2d 592, 595 (S.D.N.Y. 2004) ("Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies.") (collecting cases).

As explained by the Court,

> If exhaustion were permissible under such circumstances, every inmate could exhaust his available administrative remedies without fulfilling the functions of the exhaustion requirement: affording corrections officials the time and opportunity to quickly and economically correct its own mistakes internally, and producing a useful

record for litigation, before allowing the initiation of a federal case.

*Smith v. Kelly*, 985 F. Supp.2d 275, 290-91 (N.D.N.Y. 2013) (Suddaby, J.); *see also Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (report-recommendation of Lowe, M.J., adopted by Hurd, J.) ("If the rule were to the contrary, then, as a practical matter, no prisoner could ever be said to have failed to exhaust his administrative remedies because, immediately before filing suit in federal court, he could perfunctorily write to CORC asking for permission to file an untimely appeal, and whatever the answer, he could claim to have completed the exhaustion requirement.").

**D. Conclusion**

None of Plaintiff's three attempts to exhaust his available administrative remedies was sufficient under the PLRA, *Ross* and *Hemphill*. As for Plaintiff's first attempt (on which he appeared to rely most strongly at the hearing), simply stated, the Court agrees with Defendants that, after Plaintiff learned that his hasty complaint directly to the Inspector General had not been substantiated, and after he learned that he would not be able to file a timely grievance at Southport C.F., he fabricated the story that his grievance had been destroyed and he had been threatened while at Auburn C.F. (Hrg. Tr. at 31.) The Court is not convinced by Plaintiff's contradictory and incredible hearing testimony.

***8 ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 89) is **DISMISSED in its entirety with prejudice** [19] for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

[19]    The Court notes that this dismissal is with prejudice because "it is not possible for Plaintiff to obtain a waiver to file a late appeal to CORC." *Nickelson v. Annucci*, 15-CV-0227, 2019 WL 396003, at *1 & n.2 (N.D.N.Y. Jan. 31, 2019) (Suddaby, J.) (citing 7 N.Y.C.R.R. § 701.6[g] [2007] and *Murray v. Goord*, 03-CV-1010, 2008 WL 2522324, at *19 [N.D.N.Y. June 20, 2008] ); *see also Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003) ("[T]he broader dictum that dismissal for failure to exhaust 'should'

be without prejudice would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust."); *McCoy v. Goord*, 255 F. Supp.2d 233, 252 (S.D.N.Y. 2003) ("[W]here a plaintiff is effectively barred from administrative exhaustion–such as when the time for administrative exhaustion

has expired and the inmate has been denied a waiver to file a late grievance–courts have not hesitated to dismiss with prejudice.").

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

**All Citations**

Slip Copy, 2019 WL 652409

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 8

Case 9:19-cv-01114-TJM-TWD Document 19 Filed 06/26/20 Page 29 of 78

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)
2017 WL 920753

🟨 KeyCite Yellow Flag - Negative Treatment
Clarified on Denial of Reconsideration by Crichlow v. Fischer, W.D.N.Y.,
March 26, 2018

2017 WL 920753
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kevin Damion CRICHLOW, Plaintiff,
v.
Brian FISCHER et al., Defendants.

6:15-CV-06252 EAW
|
Signed March 7, 2017

**Attorneys and Law Firms**

Kevin Damion Crichlow, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

\*1 Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this
action pursuant to 42 U.S.C. § 1983 in the Southern District
of New York on October 16, 2012. (Dkt. 2). Plaintiff filed
an amended complaint seeking relief against 136 Defendants
on June 17, 2013 (Dkt. 12). The action was transferred to
this Court on April 28, 2015. (Dkt. 168). The action was
then severed by this Court on February 10, 2017. (Dkt. 223).
Following severance, 35 Defendants (together "Defendants")
remain. (*See id.* at 5-6).

Presently before the Court are: Defendants' motion for
summary judgment (Dkt. 177); Plaintiff's motion for
discovery (Dkt. 182); Plaintiff's motion to appoint counsel
(Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's
motion for a medical exam (Dkt. 187); Plaintiff's motion for
reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt.
192); Plaintiff's motion for a hearing (Dkt. 192); Defendants'
motion for sanctions (Dkt. 195); and Plaintiff's motion for
sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for
summary judgment is granted in part and denied in part;
Plaintiff's motion for discovery is denied without prejudice;
Plaintiff's motion to appoint counsel is denied without
prejudice; Plaintiff's motion for a stay is denied without
prejudice; Plaintiff's motion for a medical exam is denied;
Plaintiff's motion for reconsideration is denied; Plaintiff's
motion to amend is denied as moot; Plaintiff's motion for a
hearing is denied; Defendants' motion for sanctions is denied
without prejudice; and Plaintiff's motion for sanctions is
denied.

**I. Plaintiff's Allegations**

Plaintiff's amended complaint spans 142 pages. (*See* Dkt.
12). Following severance of the action into three separate
parts, this Court retained Plaintiff's claims in which he asserts
violations of his constitutional rights by Defendants relating
to Plaintiff's incarceration at the Wende Correctional Facility
("Wende") and treatment at Wyoming Community Hospital.
(*See* Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or
about September 27, 2008—the date Plaintiff was transferred
to Wende—through his transfer to Eastern Correctional
Facility on November 16, 2010. (*See* Dkt. 12 at 14-36; Dkt.
12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care
throughout his incarceration at Wende, in violation of the
Eighth Amendment. Plaintiff argues that he was not provided
mental health treatment as required (Dkt. 12 at 19), and that
he was "unreasonably exposed to infectious disease" (*id.* at
25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient
dental care from "2008 into 2013 at 3 [New York Department
of Corrections and Community Supervision] prisons." (Dkt.
12 at 36). He contends he was not provided care for "alot of
pain hip, jaw, hand, tooth's also need replacement of four's
lost teeths & restoration of function and 'oral surgery &
periodontics.' " (*Id.* at 31; *see, e.g.*, Dkt. 12-1 at 1). Plaintiff
further alleges that he was denied dental care at Wende on
June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36). As
to his medical care, Plaintiff states that Defendant George
Boucher, M.D., was grossly negligent in misdiagnosing an
injury to Plaintiff's hand, which led to Plaintiff's receiving
the "wrong surgery" on January 13, 2010. (Dkt. 12-1 at 2).
Plaintiff complains that he was denied treatment for "injuries
hip, back, shoulder, head" for "about 68 months." (*Id.* at 3).
Plaintiff also asserts that he was subjected to a risk of disease

Case 9:19-cv-01114-TJM-TWD   Document 19   Filed 06/26/20   Page 30 of 78

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at 35).

**\*2** Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende. Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] ... meaningful opportunities for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26). Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall. (*Id.* at 32). Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet. (Dkt. 12-1 at 1, 3). Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer") —the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety ...," and that prison staff was inadequately trained. (*Id.*).

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review

**\*3** Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.,* 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But, summary judgment is generally not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g., Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom,* 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." (citing *Celotex,* 477 U.S. at 326)).

### B. Statute of Limitations

Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions....' " *Pearl v. City of Long Beach,* 296 F.3d 76,

79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3 at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

**\*4** *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015). Although the "continuing violation doctrine generally applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g., Shomo v. City of N.Y,* 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of adequate nutrition and hygiene; (3) discrimination and failure

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 32 of 78

2017 WL 920753

to accommodate based on Plaintiff's disability; and (4) denial of due process rights.

The continuing violation doctrine applies to Eighth Amendment claims for deliberate indifference to medical needs. *See Shomo,* 579 F.3d at 182 ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry. Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care...." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate heath care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende. Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2). Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs. Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g., id.* at 26). Plaintiff states that while he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26). He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v.*

*Goord,* Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer,* Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

**\*5** Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act.[1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

[1]    Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under § 1983.

Plaintiff also claims due process violations related to the processing of his grievances and disciplinary hearings. In this context, the continuing violation doctrine does not apply to Plaintiff's Fourteenth Amendment due process claims because "[e]ach decision made without due process is a discrete violation, and the statute of limitations begins to

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

run from the date that the plaintiff was denied the full and fair hearing he was entitled to." *Bunting v. Fischer*, 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing *Gonzalez*, 802 F.3d at 223), *report and recommendation adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016). Thus, all of Plaintiff's claimed due process violations which occurred before October, 16, 2009, are subject to the statute of limitations and must be dismissed.

In sum, at this stage in the proceedings, Plaintiff's claims of deliberate indifference to medical care, inadequate food and hygiene, and the failure to provide reasonable accommodations for his hearing disability all survive Defendants' statute of limitations challenge. Plaintiff's due process claims which are based on the processing of his grievances and which arose before October 16, 2009, are time barred and must be dismissed.

## C. Failure to Exhaust Administrative Remedies

Next, Defendants argue that many of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. (Dkt. 177-5 at 4-6). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a summary judgment motion made in lieu of answer where inmate failed to exhaust administrative remedies). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon

completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw*, 686 F. Supp. 2d at 236 (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.' " *Dabney v. Pegano*, 604 Fed.Appx. 1, 3 (2d Cir. 2015) (quoting *Hemphill*, 380 F.3d at 686). However, the third prong of *Hemphill*, relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016). *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016). The inquiry which used to be under the third prong of *Hemphill*, is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

**\*6** Here, Plaintiff claims he filed over 300 grievances, and seems to suggest that this is sufficient to exhaust his administrative remedies. (*See* Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1). Plaintiff misunderstands the exhaustion requirement. The filing of a grievance is but the first step in exhausting administrative remedies. To exhaust DOCCS administrative remedies, a prisoner must appeal to CORC. Plaintiff's filing of 300 grievances, even if true, is insufficient to exhaust his remedies under § 1997e.

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances. (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)). "Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of fact in this case." *See Mims v. Yehl*, Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

2017 WL 920753

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

### D. Plaintiff's Due Process Claims

Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

### 1. SHU Confinement

Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra,* 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population," in determining whether a liberty interest is implicated. *Vasquez v. Coughlin,* 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

**\*7** There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz,* 380 F.3d at 654-55; *see also Tafari v. McCarthy,* 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " (quoting *Palmer,* 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights. (Dkt. 177-5 at 6-7). Defendants submitted Plaintiff's prison disciplinary record. (*See* Dkt. 177-4). The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende. (*See id.* at 8). That SHU confinement was for 30 days. (*Id.*). Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical. Because Plaintiff's disciplinary confinement fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation. Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

### 2. Grievance Processing

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21). It is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord*, No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer*, 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

### E. Retaliation

Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

> A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and

> the filing of a report is enough to state a retaliation claim. Accordingly, a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

**\*8** *Richard v. Fischer*, 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim. (*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

### F. Summary

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

### III. Plaintiff's Motion for Discovery

Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers and other evidence [to] show that the material facts are in dispute." (*Id.* at 2). Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d). In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

> A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence

2017 WL 920753

supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

*Alphonse Hotel Corp. v. Tran,* 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment). As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that discovery would alter that conclusion. Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

### IV. Plaintiff's Motion to Appoint Counsel

As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case...." (Dkt. 182 at 5). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.,* 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

**\*9** Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4). Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5). In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3).

Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper,* 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper,* the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

### V. Plaintiff's Motion for a Stay

Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

### VI. Plaintiff's Motion for a Medical Exam

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187). Rule 35 permits a court to order "a party whose ... condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody...." Fed. R. Civ. P. 35. "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause....' " *Kelly v. Times/review Newspapers Corp.,* CV 14-2995 (JMA) (SIL), 2016

Case 9:19-cv-01114-TJM-TWD Document 19 Filed 06/26/20 Page 37 of 78

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

2017 WL 920753

WL 2901744, at *1 (E.D.N.Y. May 18, 2016). " 'Rule 35 does not, however, authorize a party to file a motion for his own physical examination.' Neither may a plaintiff invoke Rule 35 in order to receive medical care. *Rodriguez v. Conway,* No. 10-CV-6243L, 2011 WL 4829725, at *3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy." Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action. (*See* Dkt. 209-5 at 1-27). Defendants have in no way challenged the substance of Plaintiff's claimed medical needs during his incarceration at Wende from 2008 to 2010. Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

## VII. Plaintiff's Motion for Reconsideration

 **\*10** Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration. Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty. of Nassau,* 779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd,* 581 Fed.Appx. 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion. Therefore, Plaintiff's motion is denied.

## VIII. Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment. (Dkt. 192). The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211). Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

## IX. Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[ ]

understand." (Dkt. 192 at 3). Plaintiff also seeks scheduling conferences or orders pursuant to Fed. R. Civ. P. 16(b) and 26(f). The Court finds that neither a hearing nor a scheduling order is necessary at this time. If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions. It is not the Court's role to answer such questions. Thus, Plaintiff's motion is denied. Once an answer is filed, the case will proceed to discovery.

## X. Defendant's Motion for Sanctions

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11. (Dkt. 195). Defendants argue that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted. (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)). Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances. (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be— but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 63 (2d Cir. 2012) (citation omitted). "Further, even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction is committed to the district court's discretion.' " *Id.* (quoting *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. (Dkt. 188-8 at 2). Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal,

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 38 of 78

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)
2017 WL 920753

see *Ceglia v. Zuckerberg,* No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation adopted by* 2014 WL 1224574 (W.D.N.Y. 2014), *aff'd,* 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions.**

**\*11**  Defendants' motion is denied without prejudice.

### XI. Plaintiff's Motion for Sanctions

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action. (*See* Dkt. 198 at 1-2). Such a misstatement is immaterial and does not warrant sanctions. As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

### CONCLUSION

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2017 WL 920753

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 872491
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Delville BENNETT, Plaintiff,
v.
FLETCHER, et al., Defendants.

No. 9:17-CV-849 (GTS/CFH)
|
Signed 01/16/2020

**Attorneys and Law Firms**

Delville Bennett, c/o BoBo Bergen House, 1173 Bergen
Street, Brooklyn, New York 11213, Plaintiff pro se.

OF COUNSEL: DAVID A. ROSENBERG, ESQ., Assistant
Attorney General., Attorney General for the, State of New
York, The Capitol, Albany, New York 12224, Attorney for
Defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]     This matter was referred to the undersigned for
Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. Magistrate Judge

**\*1** Plaintiff pro se Delville Bennett ("plaintiff"), who was,
at all relevant times, in the custody of the New York
State Department of Corrections and Community Supervision
("DOCCS"), brings this action pursuant to 42 U.S.C. §
1983, alleging that defendants Correction Officer ("C.O.")
T.A. Jiguer ("C.O. Jiguer") and C.O. Robert J. McGrath
("C.O. McGrath")—who, at all relevant times were employed
at Franklin Correctional Facility ("Franklin")—violated his
constitutional rights under the Eighth Amendment. See Dkt.
No. 26 ("Amen. Compl.").

Following initial review of plaintiff's Amended Complaint
pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §
1915A(b), Chief District Judge Glenn T. Suddaby dismissed
numerous claims and defendants from the action. See Dkt.
No. 30 at 24-25. The Court held that the following claims
survived sua sponte review: plaintiff's (1) Eighth Amendment
excessive force claims (a) against C.O. Jiguer related to an

incident that allegedly occurred on November 10, 2014, and
(b) C.O. McGrath related to incidents that allegedly occurred
on February 28, 2015, and August 18, 2016 [2] ; and (2) racial
discrimination claims against C.O. Jiguer and C.O. McGrath.
See id. at 25.

[2]     The date of this incident is listed as August
19, 2016, in the Court's previous orders. See
Dkt. No. 7 at 10, 14, 39; Dkt. No. 30 at 2, 6,
7. However, plaintiff's grievance concerning this
alleged incident makes clear that the correct date
is August 18, 2016. See Dkt. No. 65-6 at 26.
Accordingly, herein, the Court will accept August
18, 2016 as the date of the alleged incident.

Presently pending before the Court is C.O. McGrath's motion
for summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No.
65. Plaintiff opposed C.O. McGrath's motion, see Dkt. No.
71, and C.O. McGrath filed a reply. See Dkt. No. 73. For the
reasons that follow, it is recommended that C.O. McGrath's
motion be granted.

**I. Background**

**A. Facts** [3]

[3]     Only the facts relevant to plaintiff's claims against
C.O. McGrath—the only moving defendant—will
be discussed herein. See Dkt. No. 65 at 1.

The facts are reviewed in the light most favorable to plaintiff
as the non-moving party. See subsection II.A., infra. At
all relevant times, plaintiff was an inmate incarcerated at
Franklin. See Amen. Compl. at 4 ¶ 13. [4]

[4]     "Plaintiff was released from DOCCS custody on or
about March 14, 2018." Dkt. No. 65-2 at 1 n.1.

**1. February 28, 2015 Incident**

On February 28, 2015, at approximately 1:05 P.M., plaintiff
visited the Franklin law library to obtain copies of legal
materials. See Dkt. No. 26-1 at 36 ¶ 3. C.O. Gumbus [5] asked
plaintiff which materials he wanted copies of and for his copy
card. See Dkt. No. 65-4 at 218. In reply, plaintiff stated, in a

loud voice, "I don't want you to make the copies, I want one of the [c]lerk's [sic] to make my copies. I'm a grown ass man, and I have a right to speak, so you['re going to] hear me." Id. The other inmates present in the law library were "drawn to the commotion that [plaintiff] was" making. Id. C.O. Gumbus instructed plaintiff to exit the law library and to sit on a bench in the hallway until it was time to return to his housing unit. See Dkt. No. 26-1 at 36 ¶ 3; Dkt. No. 65-4 at 75. C.O. Gumbus then "shouted to" C.O. McGrath, who was stationed down the hall, to come down to the law library. Dkt. No. 65-4 at 77.

5    C.O. Gumbus was terminated as a party to this action pursuant to the Court's June 2018 Order on initial review of the Amended Complaint. See Dkt. No. 30 at 24.

**\*2** Plaintiff states that while he was waiting on the bench, he "overheard [C.O.] McGrath" tell another correction officer that plaintiff was "a cock sucker mother fucker [who] just can[']t get it, ... he should be charge[d] with threats, creating a disturbance[,] and direct order." Dkt. No. 26-1 at 35-36 ¶ 3; see Dkt. No. 65-4 at 78. According to plaintiff, C.O. McGrath "threw [him] up on the wall as if he was frisking [plaintiff] for no reason." Dkt. No. 65-4 at 81. Plaintiff also states that C.O. McGrath commented, "I kn[e]w that I would catch you again mother fucker, ... called the [s]ergeant[,] put [plaintiff] on the wall and said ... 'if you were not that old I would send you to the infirmary and hit [you] four ... times to the equivalent of [your] age in [your] short ribs[,] and [told plaintiff] that [he was] on full bed." Dkt. No. 26-1 at 36 ¶ 4; see Dkt. No. 65-4 at 78, 80, 87-88. [6] Plaintiff understood C.O. McGrath's statements to mean that "he would [have] attack[ed plaintiff] physically, sadistically," "[i]f [plaintiff] wasn't so old." Dkt. No. 65-4 at 88. [7] In response to defense counsel's question, "[s]o [C.O. McGrath] did not attack you sadistically?" plaintiff stated "[t]hat's what he said he would—that's [C.O.] McGrath." Id. Further, in response to defense counsel's inquiry, "[d]id [C.O. McGrath] actually do anything else after" making the statement about putting plaintiff in the infirmary if he weren't so old, plaintiff replied "[i]f I can recall, sir, he sent me to the dorm." Id. When asked whether he "sustained any injury" from C.O. McGrath placing him against the wall, plaintiff stated, "[j]ust the roughing up, excessive force, sir." Id. at 93. Plaintiff explained that, following this interaction with C.O. McGrath, he walked, unescorted, back to his dorm. See id. at 89. Plaintiff testified that he suffered "mental anguish," "mental distortion," and had "nightmares" as a result of the alleged

incident on February 28, 2015, and informed medical staff that he had been "handled with force." Id. at 93, 94.

6    Plaintiff testified at deposition that being on "full bed" meant being on keep-lock status. Dkt. No. 65-4 at 95.

7    Plaintiff was approximately 71 years old at the time of the February 28, 2015 incident. See Dkt. No. 65-2 at 2 n.4.

C.O. Gumbus issued plaintiff a misbehavior report relating to the February 28, 2015 incident, charging him with threats, creating a disturbance, and failing to obey a direct order in violation of DOCCS Rules 102.10, 104.13, and 106.10, respectively. See Dkt. No. 65-4 at 218. Plaintiff filed a grievance concerning this alleged incident, asserting that C.O. McGrath used unprofessional language and assaulted him. See Dkt. No. 26-1 at 34, 35-36. On March 3, 2015, plaintiff was examined by Franklin healthcare personnel. See Dkt. No. 65-4 at 215-16. An Inmate Injury Report was completed, in which plaintiff stated, he suffered an injury on February 28, 2015 at approximately 1:05 P.M. See id. at 215. Under the heading "Inmate's Statement," plaintiff wrote "[h]e hit me 4x right here," and Franklin personnel noted that plaintiff "point[ed] to [his right] rib cage." Id. (parenthesis omitted). The report further states under the caption "[d]escription of the injury," "subjective pain [right] rib cage," "0 marks noted." Id. Moreover, the report notes that no medical services were provided to plaintiff as a result of this examination. See id. at 216.

### 2. August 18, 2016 Incident

On the morning of August 18, 2016, after leaving his cell, plaintiff states that he was walking by C.O. McGrath's post when he was "confronted by [C.O. McGrath] and without any form of provocation ... immediately with excessive force at the number [three] booth badly beaten up ... with internal body blows." Amen. Compl. at 2 ¶ 5; see Dkt. No. 65-4 at 102-06. Plaintiff states that C.O. McGrath then brought him "to the ground on his face and inflicted very heavy blows." Id.; see Dkt. No. 65-4 at 111-12. Plaintiff testified at deposition that he did not recall whether C.O. McGrath said anything to him during this alleged assault. See Dkt. No. 65-4 at 107. On August 26, 2016, plaintiff filed a grievance concerning the alleged August 18, 2016 incident in which he asserted that C.O. McGrath "started cursing a lot of profanities," "threw [plaintiff] on the frisking wall with excessive force, then

kicked him to the ground on his face[,] kneeled on his back[,] applied [hand]cuffs," and again "started to kick [him] several times with a lot of body blows." Dkt. No. 65-6 at 26. The superintendent denied plaintiff's grievance on September 27, 2016. See id. at 28; Dkt. No. 26-1 at 34. The superintendent observed that plaintiff "was evaluated by medical staff and did not have any injuries" and that C.O. McGrath "issued [him] a [m]isbehavior [r]eport" as a result of the incident. Id.; Dkt. No. 26-1 at 34. The Appeal Statement on the Inmate Grievance Program (IGP) form ("form 2133") concerning the August 18, 2016 incident was left blank. See Dkt. No. 65-6 at 28; Dkt. No. 26-1 at 34.

### B. C.O. McGrath's Motion for Summary Judgment

### 1. August 18, 2019 Incident

**\*3**  C.O. McGrath first contends that plaintiff's Eighth Amendment excessive force claim against him relating to the alleged August 18, 2016 incident must be dismissed because plaintiff failed to exhaust administrative remedies. See Dkt. No. 65-2 at 8-10. In support of this contention, C.O. McGrath offers the declaration of Judy Tavernier ("Tavernier"), Franklin IGP Supervisor ("IGPS"), who states that, in her role "[a]s the IGPS, [she] is fully familiar with the procedures followed in processing inmate grievances at Franklin" and that, "[a]mong [her] duties as IGPS at Franklin, [she is] responsible for maintaining the grievance records filed by inmates at Franklin." Dkt. No. 65-6 at 2 ¶ 4. Tavernier declares that the IGP policies and procedures are contained in 7 N.Y.C.R.R. 701 *et seq.* and DOCCS Directive No. 4040, which are both available at the Franklin law library, and are attached to her declaration. See id. at 2 ¶ 5; see id. at 7-24. Tavernier states that she "conducted a thorough search of Franklin's grievance records to determine if [he] appealed [his] grievance about the alleged use of force by [C.O.] McGrath on August 18, 2016." Dkt. No. 65-6 at 4 ¶ 14. Tavernier notes that, "[i]f plaintiff had returned form 2133 to ... appeal the [s]uperintendent's determination of [his August 26, 2016 grievance], the original would be in his grievance file." Id. at 5 ¶ 18. However, Tavernier states, "[n]o such document is in [plaintiff's] grievance file." Id. Therefore, Tavernier concludes, "[i]nsofar as [p]laintiff never returned form 2133 with a signature and explanation that he wished to appeal, he did not appeal the [s]uperintendent's determination to CORC." Id. at ¶ 20. In further support, defendants observe that the Appeal Statement contained on plaintiff's form 2133 related to his August 26, 2016 grievance,

is blank and unsigned. See Dkt. No. 65-2 at 10; Dkt. No. 65-6 at 28; Dkt. No. 26-1 at 34.

C.O. McGrath also proffers the sworn declaration of Rachael Seguin ("Seguin"), Assistant Director of DOCCS IGP. See Dkt. No. 65-7 at 1 ¶ 2. Seguin states that her "duties and responsibilities include maintaining records of appeals of grievances filed by inmates" and that she "oversee[s] records that DOCCS maintains of appeals received by the Central Office Review Committee ("CORC"), which is the final level of administrative review in the DOCCS [IGP]." Id. Seguin declares that "[w]hen an inmate appeals a grievance to CORC, DOCCS Directive [No.] 4040 stipulates that it is [d]epartment policy to maintain grievance files and logs for the current year and the previous four calendar years," and that "CORC [also] maintains files of grievance appeals to CORC in accordance with the directive." Id. at 4 ¶ 12. "In fact," Seguin explains, "the CORC computer database" maintains "records of appeals of grievances received from [IGP] since the 1990s." Id. In addition, Seguin explains that, "DOCCS policies and procedures regarding the IGP are set forth in [7 N.Y.C.R.R. § 701 et seq.] and mirrored in DOCCS Directive [No. 4040]," which "is available in the [l]aw [l]ibrary at every DOCCS correctional facility (and was so available at all times relevant to this action.)." Id. a 1-2 ¶¶ 4,5.

Moreover, Seguin declares that "[c]omplaints or issues such as those" described by plaintiff concerning C.O. McGrath's alleged August under 18, 2016 assault "are the proper subject for a grievance under DOCCS grievance procedures." Dkt. No. 65-7 at 3 ¶ 11. Seguin states that "a diligent search of CORC records ... for appeals received from facility-level grievance determinations for plaintiff" revealed that "CORC did not receive any appeal from plaintiff regarding [his] grievance ... alleging that [C.O.] McGrath assaulted him at Franklin on August 1[8], 2016." Id. at 4 ¶¶ 15, 16. Attached to Seguin's declaration is the "computer printout from the CORC database reflecting the results of [her] search." Id. at ¶ 15; see id. at 8. Seguin notes that, "[a]lthough CORC ... received over 40 grievances from plaintiff while he was incarcerated at Franklin and other facilities ..., CORC did not receive any appeals from him or any grievances he initially filed at the facility level between July 2016 and December 2016." Id. at 5 ¶ 17. Thus, Seguin concludes, "plaintiff did not appeal to CORC regarding the alleged incident involving [C.O.] McGrath on August 1[8], 2016." Id. at ¶ 18.

### 2. February 28, 2015 Incident and Plaintiff's Racial Discrimination Claims

C.O. McGrath contends that plaintiff's Eighth Amendment excessive force and racial discrimination claims based on the alleged February 28, 2015 incident must be dismissed because plaintiff has failed to establish that C.O. McGrath used improper force against him or used racial slurs. See Dkt. No. 65-2 at 10-12. In support of this contention, C.O. McGrath points to plaintiff's deposition testimony in which plaintiff stated only that, on February 28, 2015, C.O. McGrath placed him against the wall in a frisk position and that plaintiff walked, unescorted, back to his dorm immediately after speaking with C.O. McGrath. See id. at 12; see Dkt. No. 65-4 at 89. Moreover, C.O. McGrath notes, although plaintiff alleges that C.O. McGrath placed him against the wall, he does not explain what, if any, force was used, and does not allege that he suffered physical injury as a result thereof. See Dkt. No. 65-2 at 12. Furthermore, C.O. McGrath argues that plaintiff's allegation that C.O. McGrath made hypothetical threats against him on February 28, 2015, is insufficient to support his claim for excessive force because "verbal threats 'do not amount to violations of constitutional rights.' " Id. at 13 (quoting Malsh v. Austin, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)) (additional citations omitted).

*4 In further support of his arguments, C.O. McGrath proffers his own sworn declaration in which he states that, "[o]n February 28, 2015, [he] assisted another [C.O.] when [p]laintiff was creating a disturbance and disobeying orders in the [l]aw [l]ibrary at Franklin," and declares that he "did not strike [p]laintiff, ... did not use any manner of physical force on him, and ... did not threaten him." Dkt. No. 65-5 at 2 ¶ 9. In addition, C.O. McGrath declares that he "never use[s] vulgar or racist language when talking to inmates, and ... did not do so on February 28, 2015, August 19, 2016, or at any other time." Id. at ¶ 10. Thus, C.O. McGrath posits, plaintiff's excessive force and racial discrimination claims relating to the alleged February 28, 2015 incident must be dismissed.

### C. Plaintiff's Response

Plaintiff contends that his response, which he styles as a "motion," "is being submitted ... to dismiss any and every summary judgment [in] connection to the [present] case." Dkt. No. 71 at 1. [8] Without once specifically mentioning C.O. McGrath, plaintiff argues only that "[d]efendants have

violated the law by using physical force against [him] without need or provocation ... maliciously, sadistically, assault and battery, constituted cruel and unusual punishment." Id. at 2. In addition, plaintiff states that he is currently suffering permanent injuries and uses a walker and a cane. See id.

[8]   Although plaintiff styled his response as a "motion," the Court will treat this pro se submission as only an opposition to C.O. McGrath's motion for summary judgment, as "plaintiff makes no argument and provides no evidence that suggests that a motion for summary judgment in [his] favor ... is warranted (or even sought)." Cotz v. Mastroeni, 476 F. Supp. 2d 332, 354 (S.D.N.Y. 2007).

### D. C.O. McGrath's Reply

In reply, C.O. McGrath contends that plaintiff's response "fails to address any of the legal arguments supporting the granting of summary judgment ..., let alone raise any genuine issues of material fact." Dkt. No. 73 at 1. Accordingly, C.O. McGrath "rests on the arguments set forth in his [m]emorandum of [l]aw" in support of his motion for summary judgment. Id. In addition, C.O. McGrath argues that, due to plaintiff's failure to submit a proper response, including his failure to respond to C.O. McGrath's statement of material facts, "the Court should deem the facts contained in [C.O. McGrath's] Local Rule 7.1(a)(3) statement as having been admitted." Id. [9]

[9]   In support of his motion, C.O. McGrath filed a Statement of Material Facts in compliance with N.D.N.Y.L.R. 7.1(a)(3), which provides, in relevant part, "WARNING: If you do not submit a proper response to the defendants' statement of material facts, **the Court may deem you to have admitted the defendants' factual statements**," and "[i]f you do not file a proper response to this motion, the Court may grant the motion **and dismiss some or all of your claims**." Dkt. No. 65 at 3; see Dkt. No. 65-1. Plaintiff's response does not include a statement of material facts and fails to address the legal arguments raised in C.O. McGrath's motion. See Dkt. No. 71. Therefore, notwithstanding plaintiff's pro se status, the Court will "follow the practice of enforcing [N.D.N.Y.]L.R. 7.1(a)(3) and accept the facts set

2020 WL 872491

forth in [d]efendant['s] Material Statement of Facts as uncontroverted to the extent those facts are supported by record evidence." Richard v. LeClaire, 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *4 (N.D.N.Y. May 6, 2019).

## II. Discussion [10]

[10]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. Celotex, 477 U.S. at 322, 106 S.Ct. 2548; see FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

**\*5**  If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Id. at 248, 250, 106 S.Ct. 2505; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and cannot rely on "mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curium)). Furthermore, "mere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treitman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

### B. Abandonment of Claims

Despite C.O. McGrath's express warning of the consequences of failing to properly respond to his motion for summary judgment, see Dkt. No. 65 at 3, plaintiff did not respond to any of the legal arguments raised in the motion for summary judgment. See generally Dkt. No. 71 at 1-2. Accordingly, plaintiff's claims against C.O. McGrath should be dismissed as abandoned. See Maher v. All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks and citation omitted)); see also Wiggan v. New York City Dep't. of Correction, No. 12-CV-1405 (GBD/HBP), 2014 WL 4631456, at *3 (W.D.N.Y. Sept. 16, 2014) (granting summary judgment and dismissing claims, as abandoned, that a pro se inmate failed to address in response to the defendants' motion for summary judgment); Martien v. City of Schenectady, No. 1:04-CV-679 (FJS/RFT), 2006 WL 1555565, at *2 (N.D.N.Y. June 2, 2006) (deeming abandoned and granting summary judgment in favor of the defendant as to a claim that the pro se plaintiff did not address in response to the defendant's motion for summary judgment). In any event, even if plaintiff had responded to the arguments raised in C.O. McGrath's motion for summary judgment, C.O. McGrath would still be entitled to summary judgment for the reasons that follow.

## C. Exhaustion

**\*6** The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See Porter, 534 U.S. at 524, 122 S.Ct. 983. "To exhaust administrative remedies, the inmate must

complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, — U.S. —, 136 S. Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, — U.S. —, 136 S. Ct. at 1858, 195 L.Ed.2d 117. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end —with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

There is no genuine dispute that, at all relevant times, DOCCS had in place a well-established three-step administrative procedure for inmate grievances known as the IGP. See Dkt. No. 65-6 at 7-24; Dkt. No. 65-7 at 2-3 ¶¶ 7-9; see

also N.Y. COMP. CODES R. & REGS. (7 N.Y.C.R.R.) § 701.5. First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident. See 7 N.Y.C.R.R. § 701.5(a)(1). An IGP representative has 16 calendar days to informally resolve the issue. See id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within 16 calendar days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. See id. at § 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. See id. at § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven calendar days after receipt of the superintendent's determination. See id. at § 701.5(d)(1)(i). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty 30 calendar days from the time the appeal was received." Id. at § 701.5(d)(3)(ii).

*7 "Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court." Murray v. Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y. 2009). On a motion for summary judgment, "[t]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action." McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

### 1. Plaintiff Failed to Exhaust his Administrative Remedies

As an initial matter, although plaintiff is no longer incarcerated, the exhaustion requirements apply to his claims because he was incarcerated at the time he filed his lawsuit. See Knight v. Mun. Corp., No. 14-CV-3783 (PAE/JCF), 2016 WL 4017208, at *2 (S.D.N.Y. May 27, 2016), report and recommendation adopted, No. 14-CV-3783 (PAE/JCF), 2016 WL 4030632 (S.D.N.Y. July 26, 2016) (citing Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004)); McNab v. New York, No. 9:12-CV-26 (GTS/ATB), 2015 WL 13744629, at *5 (N.D.N.Y. Dec. 7, 2015) ("[T]he exhaustion requirement applies to former inmates who commenced the action while still in custody but were released while the action was pending."), report and recommendation adopted sub nom. McNab v. Doe, No. 9:12-CV-26 (GTS/ATB), 2016 WL 324994 (N.D.N.Y. Jan. 27, 2016), aff'd, 686 F. App'x 49 (2d Cir. 2017) (summary order); cf. Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999) ("[L]itigants ... who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision." (emphasis added)).

C.O. McGrath has met his burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to his claims relating to the alleged August 18, 2016 incident. The sworn declarations of Tavernier and Seguin and accompanying exhibits make clear that neither Franklin IGP nor CORC have any record of plaintiff filing an administrative appeal relating to that claim. See Dkt. No. 65-6 at 4 ¶ 14, 5 ¶ 18, 20; Dkt. No. 65-7 at 4 ¶¶ 15, 16-18. Indeed, as C.O. McGrath points out, plaintiff's own documentary evidence demonstrates that he never appealed the superintendent's denial of his August 26, 2016 grievance to CORC, as the Appeal Statement on his form 2133 relating to his that grievance was left blank and unsigned. See Dkt. No. 26-1 at 34. Thus, C.O. McGrath has established that plaintiff failed to exhaust all available administrative remedies with respect to his claims relating to the alleged August 18, 2016 incident by failing to appeal his grievance to CORC. See also Omaro v. Annucci, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies."). Moreover, plaintiff's conclusory assertion that he "has demonstrated exhaustion" is belied by the record and does not create a genuine issue of material fact. Amen. Compl. at 20 ¶ 61; see Hicks, 593 F.3d at 166. Furthermore, no exception to the mandatory exhaustion requirement applies here. As the record evidence demonstrates, the inmate grievance process, as set forth in 7 N.Y.C.R.R. § 701 et seq. and DOCCS Directive No. 4040, was available to plaintiff at the Franklin law library and plaintiff was well-versed in that process as evidenced by the more than 40 grievances and appeals he filed over the course of his incarceration at Franklin and other DOCCS facilities. See Dkt. No. 65-6 at 2 ¶ 5; Dkt. No. 65-7 at 1-2 ¶¶ 4,5, 5 ¶ 17, 8.

**\*8** Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. See Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004). However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. See id. at 88; see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at \*9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."). Here, more than one year and five months passed between the superintendent's September 7, 2016 denial of plaintiff's grievance and his release on March 14, 2018, during which time plaintiff failed to administratively appeal the superintendent's determination to CORC. See Dkt. No. 26-1 at 34; Dkt. No. 65-2 at 1 n.1. Consequently, dismissal with prejudice of plaintiff's Eighth Amendment excessive force and racial discrimination claims relating to the alleged August 18, 2016 incident is appropriate. See Berry, 366 F.3d at 88 (holding that a former inmate's federal lawsuit was properly dismissed with prejudice where he failed to exhaust available administrative remedies despite being incarcerated "for several months after the onset of the conditions that gave rise to his complaints and prior to release").

Accordingly, in the alternative to dismissal of plaintiff's claims relating to the alleged August 18, 2016 incident as abandoned, it is recommended that these claims be dismissed with prejudice for failure to exhaust available administrative remedies.

### D. Eighth Amendment Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

### 1. Excessive Force—February 28, 2015

To establish an Eighth Amendment excessive force claim, a plaintiff must satisfy both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted [is] sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 8, 112 S.Ct. 995 (internal quotation marks and citation omitted); Blyden, 186 F.3d at 262. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims, 230 F.3d at 22 (internal quotation marks, alteration, and citation omitted). However, "the malicious use of force to cause harm[ ] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9, 112 S.Ct. 995). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10, 112 S.Ct. 995 (internal quotation marks and citations omitted). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id. at 7, 112 S.Ct. 995.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citations omitted). Thus, the key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[ ] harm." Hudson, 503 U.S. at 7, 112 S.Ct. 995 (internal quotation marks and citations omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (per curiam) (Observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases—"not whether a certain quantum of injury was sustained.") (internal quotation marks and citation omitted). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:

**\*9** the extent of the injury and the mental state of the defendant[;] ... the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Here, C.O. McGrath has established entitlement to summary judgment dismissing plaintiff's Eighth Amendment excessive force claim based on the alleged February 28, 2015 incident. Even viewing the evidence in the light most favorable to plaintiff as the nonmoving party, the documentary evidence establishes that, at most, C.O. McGrath used de minimis force on plaintiff when he "threw" plaintiff against a wall in a frisk position after plaintiff caused a disruption and disobeyed orders in the Franklin law library on February 28, 2015. Dkt. No. 65-4 at 81; Dkt. No. 65-4 at 218; see Tavares v. City of New York, No. 08-CV-3782, 2011 WL 5877550, at \*6 (S.D.N.Y. Oct. 17, 2011) (holding that a pat frisk where the plaintiff was "forcefully 'compressed' against the wall" was not a violation of the Eighth Amendment and noting that "[c]ourts in this Circuit have routinely found such types of minimal injuries and pain insufficiently serious or harmful to satisfy the objective element of the Eighth Amendment analysis"); Show v. Patterson, 955 F. Supp. 182, 192, 193 (S.D.N.Y. 1997) (finding only de minimis force used where officer "push[ed an inmate against the wall" "immediately following a prison disturbance," which resulted in "no broken bones, bruises[,] or swelling"). Indeed, plaintiff's Inmate Injury Report—which does not name C.O. McGrath—indicates only that plaintiff suffered "subjective injuries" for which he received no medical treatment and sustained no visible marks as a result of the alleged February 28, 2015 incident. Dkt. No. 65-4 at 215; see Show, 955 F. Supp at 193; see also Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (granting summary judgment and dismissing an inmate's Eighth Amendment excessive force claim where the inmate had no medically determinable injuries after being pushed into a bar while being restrained). Further, although plaintiff states conclusorily that he suffers

"permanent life injuries" and uses a "walker and cane," Dkt. No. 75 at 2; see Amen. Compl. at 18, "neither his deposition testimony nor any other evidentiary material in the record reveals that as a result of" the alleged February 28, 2015 incident, plaintiff "suffered any physical injury" aside from subjective pain in his ribs—which he in no way attributes to his alleged necessity of using a walker and cane. Wright, 554 F.3d at 270; see Phelps v. Szubinski, 577 F. Supp. 2d 650, 663 (E.D.N.Y. 2008) (granting motion for summary judgment where arestee's excessive force claim was "based on mere speculation [and] conclusory allegations" and there was "no demonstrable physical injury" resulting from the officer's actions). Thus, any injury suffered as a result of the February 28, 2015 incident was de minimis. See Wright, 554 F.3d at 270; see also Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (noting that an example of de minimis use of force is "[a]n inmate who complains of a push or shove that causes no discernible injury." (internal quotation marks and citations omitted)).

**\*10** Moreover, aside from plaintiff's conclusory statements that Franklin personnel "us[ed] physical force against [him] without need or provocation ... maliciously, sadistically," Dkt. No. 71 at 1, the record is devoid of evidence indicating that C.O. McGrath used force against plaintiff "maliciously and sadistically [to] cause[ ] harm." Hudson, 503 U.S. at 7, 112 S.Ct. 995 (internal quotation marks and citations omitted). Rather, the evidence establishes, at most, that C.O. McGrath used de minimis force "in a good-faith effort to maintain or restore discipline" after plaintiff caused a disruption and disobeyed orders in the Franklin law library. Id. (internal quotation marks and citations omitted). In opposition, plaintiff's conclusory and self-serving allegations that C.O. McGrath "rough[ed him] up" through the use of "excessive force" are insufficient to raise a genuine issue of material fact. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case") (internal quotation marks and citation omitted), overruled on other grounds; see also Zembko v. Northwestern Mut. Life Ins. Co., No. 3:05-CV-918 (AHN), 2007 WL 948323, at \*4 n.1 (D. Conn. Mar. 26, 2007) ("[A] nonmovant's self-serving conclusory statements that dispute the movant's evidence cannot create material issues of fact to avoid summary judgment." (internal quotation marks and citation omitted)).

In addition, as C.O. McGrath correctly argues, even if C.O. McGrath threatened plaintiff that, but for plaintiff's age,

he would have "sen[t him] to the infirmary and hit [him] four ... times" and used profanities, Dkt. No. 26-1 at 36 ¶ 4, given the absence of physical injury resulting from the alleged February 28, 2015 incident, such " 'verbal threats do not amount to violations of [plaintiff's] constitutional rights.' " Dkt. No. 65-2 at 13 (quoting *Malsh*, 901 F. Supp. at 763); *see also Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under [section] 1983."); *Wellington v. Langendorf*, No. 9:12-CV-1019 (FJS/ DEP), 2013 WL 3753978, at *11 (N.D.N.Y. July 15, 2013) ("It is well-established that mere verbal threats, without more, do not rise to a constitutional claim under 42 U.S.C. § 1983."). Accordingly, it is recommended that plaintiff's Eighth Amendment excessive force claim against C.O. McGrath based on the alleged February 28, 2015 incident be dismissed with prejudice.

### E. Racial Discrimination

"[T]he use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983." *Baskerville v. Goord*, No. 97-CV-6413, 1998 WL 778396, at *7 (S.D.N.Y. Nov. 5, 1998). "Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie." *Id.* Here, as C.O. McGrath contends, plaintiff has proffered no factual support to establish that he used any racial slurs or epithets whatsoever. Indeed, plaintiff alleges only that C.O. McGrath was "cursing a lot of profanities" with respect to the August 18, 2016 incident, but explicitly testified at deposition that he did not recall what C.O. McGrath said at that time. Dkt. No. 65-6 at 26; *see* Dkt. No. 65-4 at 107. Further, plaintiff alleges only that C.O. McGrath used profanity and called him vulgar names during the alleged February 28, 2015 incident, but does not contend that he used racial slurs or epithets at that time and, as discussed above, has failed to prove that those statements were made in connection with any physical injury. *See* Dkt. No. 26-1 at 34-36; *Banks v. Annucci*, 48 F. Supp. 3d 394, 406 (N.D.N.Y. 2014) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983."). In fact, plaintiff's only allegations concerning the use of racial slurs concern C.O. Jiguer's purported statements in relation to the November 10, 2014 incident, which is not at issue on the present motion and which plaintiff does not allege that C.O. McGrath was involved. *See* Amen. Compl. at 4,5 ¶¶

14, 15. Accordingly, it is recommended that plaintiff's racial discrimination claims against C.O. McGrath be dismissed.

### III. Conclusion

*11 **WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that C.O. McGrath's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 65) be **GRANTED** in its entirety and the following of plaintiff's claims be **DISMISSED WITH PREJUDICE** insofar as asserted against C.O. McGrath:

(1) Eighth Amendment excessive force claims; and

(2) Racial discrimination claims, and it is further

**RECOMMENDED**, that the action be **TERMINATED** as to C.O. McGrath, and it is further,

**ORDERED**, that that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72. [11]

[11]     If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day

**Bennett v. Fletcher, Slip Copy (2020)**

2020 WL 872491

that is not a Saturday, Sunday, or legal holiday. Id.
§ 6(a)(1)(C).

**All Citations**

Slip Copy, 2020 WL 872491

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 871156
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Delville BENNETT, Plaintiff,

v.

Thomas A. JIGUERE, Officer, Franklin
Corr. Fac.; and Robert J. McGrath,
Officer, Franklin Corr. Fac., Defendants.

9:17-CV-0849 (GTS/CFH)
|
Signed 02/21/2020

**Attorneys and Law Firms**

DELVILLE BENNETT, Plaintiff, Pro Se, c/o Bobo Bergen House, 1173 Bergen Street, Brooklyn, New York 11213.

OF COUNSEL: ERIK BOULE PISONNAULT, ESQ., Assistant Attorney General, HON. LETITIA A. JAMES, Attorney General for the State of New York Counsel for Defendants, 26 Liberty Street, New York, New York 10005.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* prisoner civil rights action filed by Delville Bennett ("Plaintiff") against Thomas A. Jiguere ("Defendant Jiguere") and Robert J. McGrath ("Defendant McGrath"), are (1) Defendant McGrath's motion for summary judgment, and (2) United States Magistrate Judge Christian F. Hummel's Report-Recommendation recommending that Defendant McGrath's motion be granted in its entirety and that Plaintiff's claims against Defendant McGrath be dismissed. (Dkt. Nos. 65, 74.) None of the parties have filed an objection to the Report-Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.) After carefully reviewing the relevant papers herein, including Magistrate Judge Hummel's thorough Report-

Recommendation, the Court can find no clear-error in the Report-Recommendation. [1] Magistrate Judge Hummel employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, Defendant McGrath's motion for summary judgment is granted in its entirety, and Plaintiff's claims against Defendant McGrath are dismissed.

[1]     When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 74) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendant McGrath's motion for summary judgment (Dkt. No. 65) is **GRANTED**; and it is further

**ORDERED** that those of Plaintiff's claims in his Second Amended Complaint (Dkt. No. 26) that are asserted against Defendant McGrath are **DISMISSED with prejudice**, and the Clerk of the Court shall **TERMINATE** Robert J. McGrath as a Defendant in this action.

**All Citations**

Slip Copy, 2020 WL 871156

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 51 of 78

2017 WL 8894723
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alan HAMM, Plaintiff,
v.
M. FARNEY, ASAT Counselor; Gouverneur
Correctional Facility, Defendant.

No. 9:13-CV-1302 (BKS/CFH)
|
Signed 12/21/2017
|
Filed 12/22/2017

**Attorneys and Law Firms**

Alan Hamm, King Boro Men's Shelter, 681 Albany Avenue, Brooklyn, New York, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, OF COUNSEL: KEITH J. STARLIN, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1]     This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1** Plaintiff pro se Alan Hamm ("plaintiff"), a former inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant John Farney (sued herein as "M. Farney") [2]—who, at all relevant times, was employed at Gouverneur Correctional Facility ("Gouverneur")—violated his constitutional rights under the Fourteenth Amendment, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Dkt. No. 51 ("Am. Compl."). Presently pending before the Court is defendant's Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 112.

Plaintiff did not file a response. For the following reasons, it is recommended that defendant's motion be granted.

[2]     The Clerk of the Court is directed to correct the caption on the docket to reflect John Farney as the proper defendant.

**I. Failure to Respond**

Plaintiff did not oppose defendant's Motion for Summary Judgment and did not ask for an extension of time to respond. Plaintiff was notified of the consequences of failing to respond to a summary judgment motion. Dkt. No. 113. Thus, plaintiff was adequately apprised of the pendency of the motion and the consequences of failing to respond. However, "[t]he fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, a defendant is entitled to judgment only if the material facts demonstrate his entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56(c). Additionally, "[a] verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist...." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted). Consequently, the facts set forth in defendant's Rule 7.1 Statement of Material Facts are accepted as true, but only as to those facts that are not disputed by the facts set forth in the verified amended complaint. N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted). Plaintiff and defendant offer similar accounts of the events that transpired, and few facts are in dispute. See Am. Compl., Dkt. No. 112-1.

**II. Background**

**A. Plaintiff's Recitation of the Facts**

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection III.A. infra. Plaintiff alleges that on April 16, 2013, while participating in the Alcohol and Substance Abuse Treatment ("ASAT") program at Gouverneur, ASAT Counselor Mr. Farney reprimanded him for using the restroom, "despite Mr. Farney knowing that [he had] a medical condition that requires [him] to urinate frequently." Am. Compl. at 3-4. Mr.

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

Case 9:19-cv-01114-TJM-TWD  Document 19  Filed 06/26/20  Page 52 of 78

Farney directed plaintiff to write an essay as to why it was inappropriate to use the bathroom during class, and recite it aloud during the next class. Id. at 4. If he refused, plaintiff would be removed from the ASAT program. Id. Plaintiff voluntarily removed himself from the ASAT program "as neither of the two options that [Mr. Farney] offered ... would have accommodated [him] for his medical disability." Id. In response to plaintiff's resignation from the program, the Time Allowance Committee ("TAC") rescinded his good behavior allowance (good time credits), and directed that DOCCS hold plaintiff in prison until his maximum expiration date. Am. Compl. at 4.

**B. Defendant's Recitation of the Facts**

**\*2** In support of this motion, defendant filed a Statement of Material Facts.[3] On April 16, 2013, plaintiff was enrolled in Gouverneur's ASAT program. Dkt. No. 112-1 ¶ 17. The program consists of a series of "program modules" concerning alcohol and substance abuse, which takes between six and twelve months to successfully complete. Id. ¶¶ 7, 18. Prior to admission, inmates must sign an ASAT Screening Questionnaire. Id. ¶¶ 20, 21 (internal quotation marks and citation omitted). The Questionnaire states that inmates "agree to abide by all the ASAT program policies and procedures." Id. ¶ 22 (internal quotation marks and citation omitted). Plaintiff received and signed the ASAT Screening Questionnaire during his program admission process on February 7, 2013. Id. ¶ 20.

[3]  Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying

each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

Inmates participating in the ASAT program also must sign a Behavior Contract which "specifically states, in part, that participating inmates must abide by all program policies and procedures; must participate in group sessions in a respectful manner; and that failure to comply with ASAT program policies and procedures will result in disciplinary action which may include dismissal from the program." Dkt. No. 112-1 ¶ 25 (internal quotation marks and citation omitted). The Behavior Contract further mandates that inmates "must be present for all treatment activities and may not leave group ... without permission," as well as "sit in an appropriate and attentive manner in [their] assigned seat." Id. ¶¶ 26, 27 (internal quotation marks and citation omitted). A violation of these procedures and policies "may result in discharge from treatment, disciplinary action, behavioral contracts, learning experiences, pull ups, a referral to Treatment Plan Review Committee, or counseling notifications." Id. ¶ 28 (internal quotation marks and citation omitted). Moreover, if an inmate "refuse[s] or sign[ed] out of treatment, or if [he is] unsatisfactorily discharged from treatment, [he] must wait 30 days from the date of discharge before he can request consideration for readmission." Id. ¶ 29. Plaintiff signed the Behavior Contract. Id. ¶ 28.

Although the Behavior Contract mandated that inmates use the restroom during designated breaks, Mr. Farney allowed participating inmates to use the restroom during class, as long as they asked permission in advance. Dkt. No. 112-1 ¶¶ 30, 31. Before April 16, 2013, on at least one other occasion, plaintiff used the restroom during an ASAT program session without first asking permission. Id. ¶ 40. In response, Mr. Farney verbally warned plaintiff that he needed to ask permission before leaving his seat. Id. ¶ 41. Plaintiff did not mention to Mr. Farney that he had a medical condition that caused him to urinate frequently. Id. ¶ 42. On April 16, 2013, plaintiff again left his seat during the ASAT program session to use the restroom without asking permission. Id. ¶ 43. As not to disrupt an ongoing presentation, Mr. Farney waited until plaintiff returned to his seat to counsel plaintiff, reminding him that

Case 9:19-cv-01114-TJM-TWD Document 19 Filed 06/26/20 Page 53 of 78

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

he needed permission to use the restroom. Id. ¶¶ 43, 44, 47. Pursuant to the ASAT program's standards, policies, and procedures, Mr. Farney issued plaintiff an Inmate Counseling Notification and instructed him to write a five hundred word essay on the importance of respecting others in the ASAT program session. Id. ¶¶ 48, 51. Mr. Farney further instructed plaintiff to recite the essay aloud to the class. Id. ¶ 51. Mr. Farney had assigned such "learning experiences" on "countless" other occasions for the same conduct. Id. ¶ 52. Plaintiff refused to write the essay, and, instead, voluntarily signed a Program Refusal Notification form, effectively withdrawing himself from the program. Id. ¶¶ 54, 55. The Program Refusal Notification form affirmed that plaintiff "acknowledged that he was refusing to participate in the ASAT program, and that he understood that his refusal to participate could result in denial of Parole, the loss of Good Time, denial of Merit Time and/or Earned Eligibility Program certificate and ineligibility for an area of preference transfer." Id. ¶ 56. Mr. Farney also verbally informed plaintiff of the consequences of signing the Program Refusal Notification form. Id. ¶ 57.

**\*3** Plaintiff did not mention a medical condition until after Mr. Farney instructed him to write the essay. Dkt. No. 112-1 ¶ 59. Before April 16, 2013, Mr. Farney did not notice plaintiff using the restroom more frequently than normal, nor did plaintiff provide Mr. Farney or the ASAT staff with documentation of such medical condition. Id. ¶¶ 60, 62.

In April 2013, the TAC reviewed plaintiff's file and determined that he should not be granted three months of good time from his total potential allowance of one year, eight months, and twenty days. Dkt. No. 112-1 ¶¶ 74-75. The Committee based its decision on plaintiff's entire file, as well as his withdrawal from a series of programs, including, in part, the April 16, 2013 withdrawal from the ASAT program. Id. ¶ 76.

### III. Discussion [4]

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Summary Judgment Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law...."

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 54 of 78

**\*4** Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion

As a threshold matter, defendant contends that plaintiff has failed to exhaust his administrative remedies. Dkt. No. 112-21 at 4-11. Plaintiff argues that he exhausted his administrative remedies. Am. Compl. at 6. He contends that despite "foul play" on behalf of the Superintendent and Central Office Review Committee ("CORC"), he sent the grievance office his appeal of the Superintendent's decision to send to CORC, and "the grievance office informed plaintiff that they did not receive [his] appeal." Id. at 25. On April 19, 2013, the Gouverneur Inmate Grievance Review Committee ("IGRC") received plaintiff's April 16, 2013 grievance (GOV-16890-13) about the April 16, 2013 incident in the ASAT program. Dkt. No. 112-1 ¶ 108. The IGRC denied that grievance, and plaintiff appealed the decision to the Superintendent. Id. ¶ 109. On May 6, 2013, the Superintendent upheld the IGRC's denial of grievance GOV-16890-13, and served plaintiff with two copies of that decision. Id. ¶ 110. Plaintiff did not appeal the Superintendent's decision to CORC. Id. ¶ 111.

On November 14, 2014, the IGRC received plaintiff's second grievance (GOV-17852-14) dated November 9, 2014, which claimed that he had tried to appeal grievance GOV-16890-13, and inquired whether he would be permitted to file an appeal of that grievance to CORC. Dkt. No. 112-1 ¶ 113. The IGRC denied plaintiff's grievance and informed him that any appeal of grievance GOV-16890-13 should have been submitted within seven days of the Superintendent's decision. Id. ¶ 114. Plaintiff appealed the decision to the Superintendent. Id. On November 28, 2014, the Superintendent affirmed the IGRC's denial of grievance GOV-17852-14, and served plaintiff with two copies of the decision. Id. ¶ 115. Plaintiff did not appeal the Superintendent's decision to CORC. Id. ¶ 116.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[5]

[5]      In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

**\*5** Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ). "Next, an administrative scheme might be so opaque

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 55 of 78

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

that it becomes, practically speaking, incapable of use." Id.
Lastly, administrative remedies are unavailable where "prison
administrators thwart inmates from taking advantage of a
grievance process through machination, misrepresentation, or
intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?

There is no genuine dispute that at all relevant times, DOCCS
had in place a three-step inmate grievance program. N.Y.
COMP. CODES R. & REGS. tit. 7, § 701.5. [6] Defendant
concedes that plaintiff completed the first level of the
grievance procedure—filing two grievances with IGRC—
which were recorded, assigned grievance numbers, and
decided. Dkt. No. 112-13 at 2. Defendant also does not dispute
that plaintiff appealed both grievances to the Superintendent.
See id. Plaintiff claims that he sent the Gouverneur grievance
office his appeal of the Superintendent's decision of grievance
GOV-16890-13 "to be processed up to [CORC]," but that
the grievance office never received his appeal. Compl. at 6.
However, the record establishes that plaintiff failed to submit
an appeal of grievance GOV-16890-13 to CORC during
the time he was housed in Gouverneur. DOCCS' records
provide no evidence of plaintiff's appeal to CORC, even
though plaintiff maintains that he filed such appeal. Dkt. Nos.
112-13 at 2; 112-17 at 2-3. Gouverneur's IGP Supervisor
Laura Looker and DOCCS' Assistant Director of IGP Jeffrey
Hale both declared that a search of the DOCCS database
confirmed plaintiff's original grievance, as well as an appeal
to the Superintendent, but produced no record of an appeal
to CORC. Id.; see Dkt. Nos. 112-11 ("Looker Decl.") at
6; 112-16 ("Hale Decl.") at 4-5. Plaintiff has not offered
evidence of his Appeal Statement or any other letter to CORC
that the undersigned could consider as an attempt to comply
with the exhaustion requirements. Moreover, even if plaintiff
had submitted an appeal and failed to receive a response
from CORC within forty-five days of filing, he was obligated
to write to the Gouverneur IGP Supervisor to confirm that
the appeal was transferred to CORC. See 7 N.Y.C.R.R. §
701.5(d)(3)(i) ("If a grievant does not receive a copy of the
written notice of receipt within 45 days of filing an appeal,
the grievant should contact the IGP supervisor in writing to
confirm that the appeal was filed and transmitted to CORC.").
Plaintiff's October 24, 2014 letter—sent to Gouverneur's IGP
office nearly a year and a half after the alleged incident—
does not constitute compliance with 7 N.Y.C.R.R. § 701. See
7 N.Y.C.R.R. § 701.6(g)(1)(b) provides:

> The IGP supervisor may grant an
> exception to the time limit for
> filing an appeal of an IGRC or
> superintendent's decision based on
> mitigating circumstances (e.g., failure
> to implement action required by the
> IGRC or superintendent's decision
> within 45 days, etc.). An exception
> to the time limit may not be granted
> if the request was made more than
> 45 days after the date of the decision
> unless the late appeal asserts a failure
> to implement the decision.

[6]    First, the inmate must file a complaint with an
inmate grievance program ("IGP") clerk within
twenty-one days of the alleged incident. Id. at
§ 701.5(a)(1). An IGP representative has sixteen
calendar days to informally resolve the issue.
Id. at § 701.5(b)(1). If no informal resolution
occurs, the IGRC must hold a hearing within
sixteen days of receipt of the grievance and
must issue a written decision within two working
days after the conclusion of the hearing. Id.
§§ 701.5(b)(2)(i)-(ii). If the determination is
unfavorable to the inmate, the inmate may
appeal the IGRC's determination to the facility
superintendent within seven calendar days of
receipt of the determination. Id. § 701.5(c)(1). If
the superintendent's determination is unfavorable,
the inmate may appeal to CORC within seven days
after receipt of the superintendent's determination.
Id. §§ 701.5(d)(i)-(ii). CORC must "review each
appeal, render a decision on the grievance, and
transmit its decision to the facility, with reasons
stated, for the [inmate], the grievance clerk, the
superintendent, and any direct parties within thirty
(30) calendar days from the time the appeal was
received." Id. § 701.5(d)(3)(ii).

**\*6** Plaintiff's October 24, 2014 letter does not offer any
mitigating circumstances that would exempt him from the
time limitations established in the regulations. Am. Compl.
at 15. Plaintiff filed a subsequent letter on October 30,
2014, which requests another copy of the Superintendent's
decision to appeal to CORC and states that the IGP office's

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 56 of 78

2017 WL 8894723

failure to receive his appeal was "not due to error on [his] part." Id. at 22. This letter also fails to establish mitigating circumstances as to why plaintiff waited nearly a year and a half to inquire whether CORC reached a decision on grievance GOV-16890-13. Id. Moreover, plaintiff sent both of his letters one year after he commenced this lawsuit, further establishing that plaintiff failed to exhaust his administrative remedies prior to initiating this action. Lopez v. Cipolini, 136 F.Supp.3d 570, 582 (S.D.N.Y. 2015) (internal citation and quotation marks omitted) ("A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court.... [S]ubsequent exhaustion after suit is filed ... is insufficient.").

Moreover, insofar as plaintiff suggests that letters he wrote to the DOCCS Deputy Commissioner of Program Services, the DOCCS Commissioner, and Acting DOCCS Commissioner regarding the alleged April 16, 2016 incident constitutes an attempt at exhaustion, these letters were not addressed to, nor were they sent to, the Superintendent or CORC as part of the established grievance procedures. Dkt. No. 112-10. It is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007); Day v. Chaplin, 354 Fed.Appx. 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures."). Thus, because these letters were sent to officials outside the grievance chain of command, they do not satisfy the exhaustion requirement. As plaintiff has not provided evidence of exhaustion, the undersigned concludes that plaintiff has failed demonstrate that grievance GOV-16890-13 was properly exhausted.

### 2. Availability of Administrative Remedies

Plaintiff claims that the Superintendent and CORC "gave him a hard time," and suggests that the grievance process is rampant with "foul play." Am. Compl. at 25. Plaintiff further argues that the Gouvernour IGP "play[ed] games" with him, and did not file his appeal in retaliation for his lawsuit. Id. Defendants contend that the record clearly demonstrates that the grievance process was available to plaintiff. Dkt. No. 112-21 at 11. There is no indication in the record that Gouverneur staff prevented plaintiff from further appeals, made the grievance process unavailable, or outright ignored his grievances at every step. See Nelson v. Smith, No. 6:12-CV-6581(MAT), 2014 WL 2807557, at *2 (W.D.N.Y. June

20, 2014) (internal quotation marks and citation omitted) ("Where a party makes a clear and positive showing that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the [party] from the requirement.").

To the extent that plaintiff accuses the Gouverneur IGP of "foul play," plaintiff has not offered evidence to support that contention. See Ross, 136 S.Ct. at 1860 (demonstrating that the grievance program is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process" by misleading or threatening inmates "so as to prevent their use of otherwise proper procedure."). Further, plaintiff's argument that the Gouverneur IGP retaliated against him for filing this lawsuit is without merit, because plaintiff was required to have exhausted his administrative remedies prior to the initiation of this lawsuit. See Lopez, 136 F.Supp.3d at 582. Accordingly, as exhaustion is a prerequisite to filing an action in federal court (Woodford, 548 U.S. at 85, 126 S.Ct. 2378), it is recommended that Mr. Farney's Motion for Summary Judgment be granted.

### C. Heck Doctrine

**\*7** As an alternative ground to dismissal for failure to exhaust administrative remedies, defendant argues that plaintiff's claims are barred by Heck v. Humphrey. Dkt. No. 112-21 at 11-13. Plaintiff contends that "the Time Allowance Committee [ ] took all available good time behavior allowance (good time credit) directing that [plaintiff] be held until his maximum expiration date ... thereby ... plac[ing] [him] in a [position] that he has been denied the equal opportunity others without disabilities have" to combat his alcohol and substance abuse through rehabilitation. Am. Compl. at 4.

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

Case 9:19-cv-01114-TJM-TWD Document 19 Filed 06/26/20 Page 57 of 78

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus.

Heck, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Therefore, when an inmate seeks damages in a § 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487, 114 S.Ct. 2364. Where the Heck doctrine applies, a plaintiff "ha[s] no cause of action under § 1983." Poventud v. City of N.Y., 750 F.3d 121, 130 (2d Cir. 2014).

In Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended the Heck doctrine to disciplinary proceedings, holding that a plaintiff's procedural due process claim regarding a prison disciplinary hearing was not cognizable under § 1983 where the due process claim necessarily implied the invalidity of the disciplinary disposition and/or punishment unless the disposition has been reversed. Balisok, 520 U.S. at 650, 117 S.Ct. 1584. "The rule announced in Heck v. Humphrey thus applies whenever a prisoner challenges the fact or length of his conviction or sentence. This includes situations in which an inmate challenges the denial of 'good time' credits, where such denial impacts the duration of his confinement." Phelan v. Hersh, No. 9:10-CV-0011 (GLS)(RFT), 2010 WL 277064, at *3 (N.D.N.Y. Jan. 20, 2010) (citing Balisok, 520 U.S. at 646-48, 117 S.Ct. 1584; Higgins v. Coombe, No. 95 Civ. 8696(RCC), 1999 WL 760658, at *3-4, (S.D.N.Y. Sep. 24, 1999); Odom v. Pataki, No. 00 Civ. 3727, 2001 WL 262742, at *3-4 (S.D.N.Y. Mar. 15, 2001) ). In Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006), the Second Circuit held:

a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any*

*sanctions that affect the duration of his confinement.*

Peralta, 467 F.3d at 104 (emphasis in original). The Court concluded that

that the purpose of the Heck favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition.

**\*8** Id.

Plaintiff's equal protection claim challenges the April 2013 TAC's disposition, which ordered the loss of good time credits. Am. Compl. at 4, 5. Because the April 2013 TAC disposition "relates only to good time and thus, to the length of plaintiff's incarceration," plaintiff's claims fall within the gambit of the Heck doctrine. Lebron v. Armitage, No. 9:08-CV-508 (TJM/GJD), 2009 WL 9123270, at *6 (N.D.N.Y. Sept. 23, 2009). The Lebron Court found that claims challenging TAC's decision to withhold good time credits do not fall into Peralta's "mixed sanction" exception, and cannot proceed separately under section 1983. Id. Further, because the plaintiff did not show that the TAC disposition was invalidated, the plaintiff's claims relating to that decision were dismissed. Id. Here, a judgment in plaintiff's favor would necessarily invalidate his April 2013 TAC disposition wherein TAC withheld his good time credits. [7] Therefore, the Heck doctrine bars plaintiff's equal protection claim against Mr. Farney. Heck, 512 U.S. at 487, 114 S.Ct. 2364. Accordingly, it is recommended that Mr. Farney's motion on this ground be granted.

[7]     Basing its decision, in part, on plaintiff's withdrawal from the ASAT program, "TAC took all available good behavior allowance (good time

Case 9:19-cv-01114-TJM-TWD   Document 19   Filed 06/26/20   Page 58 of 78

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

credit) [and] direct[ed] that [plaintiff] be held until his maximum expiration date." Am. Compl. at 4.

## D. Equal Protection

Addressing plaintiff's claims on the merits, Mr. Farney argues that plaintiff cannot establish unlawful discrimination due to disability in violation of the Fourteenth Amendment. Dkt. No. 112-21 at 13-17. The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons are treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Vegas v. Artus, 610 F.Supp.2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

If an individual cannot "allege membership in [a protected] class, he or she can still prevail in ... a class of one equal protection claim." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (internal quotation marks and citations omitted). To succeed, a plaintiff must show "that [he] were intentionally treated differently from other similarly-situated individuals without any rational basis." Clubside, Inc. v. Valentin, 468 F.3d 144, 158-59 (2d Cir. 2006). Additionally, plaintiffs must establish an extremely high "level of similarity between plaintiffs and the persons with whom they compare themselves...." Neilson, 409 F.3d at 104. "Generally, whether parties are similarly situated is a fact-intensive inquiry" best suited for the jury unless "no reasonable juror could find that

the persons to whom plaintiff compares itself are similarly situated," and then summary judgment is appropriate. Id. (citations omitted).

**\*9** Plaintiff contends that Mr. Farney unlawfully discriminated against him because of his disability in violation of his equal protection rights. Am. Compl. at 5. It is well-settled that "[u]nless a classification trammels fundamental personal rights or is drawn upon inherent suspect distinctions such as race, religion or alienage," it is presumed that a distinction is constitutional as long as they are "rationally related to a legitimate state interest." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). "Persons with disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review." Marino v. City University of N.Y., 18 F.Supp.3d 320, 340 (E.D.N.Y. 2014) (citing City of Cleburne, 472 U.S. at 439). As plaintiff claims that Mr. Farney discriminated against him because of his disability, a heightened level of scrutiny does not apply. See id. Thus, plaintiff's claim will be assessed on status as a "class of one." Id. "To state a valid equal protection 'class of one' claim, a plaintiff must allege (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." Scott v. Dennison, 739 F.Supp.2d 342, 362 (W.D.N.Y. 2010) (internal quotation marks and citation omitted).

### 1. Similarly-Situated Persons

As to the first prong, plaintiff does not contend, and the record does not suggest, that Mr. Farney treated plaintiff differently than other similarly-situated persons. Plaintiff has not introduced evidence of Mr. Farney failing to punish another ASAT program participant who used the restroom without first asking permission. Rather, the record establishes that Mr. Farney treated plaintiff the same as any other ASAT program participant. The ASAT Behavior Contract requires that participants be "present for all treatment activities," "sit in an appropriate and attentive manner in an assigned seat," and that "all personal hygiene activities [ ] be attended to at appropriate times." Dkt. No. 112-4 at 2, 3. ASAT standards also provide that "violation of [such rules] may result in discharge from treatment, disciplinary action, behavioral contracts, *learning experiences*, pull ups, a referral to Treatment Plan Review Committee, or counseling notifications." Id. at 3 (emphasis added). Plaintiff received

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

and signed the ASAT Behavior Contract. See Farney Decl., Ex. B.

Mr. Farney declared that it was his general practice to let participants use the restroom while the program was in session, as long as they first asked permission. Farney Decl. at 4. If a participant broke that rule, Mr. Farney routinely assigned essays as a "learning experience." Id. Mr. Farney declared that, in his twenty-four years as an ASAT instructor, he asked "countless inmates on countless occasions to write such essays and read them aloud to the class, including other inmates who have used the restroom during class without asking for permission." Id. There is no indication in the record that on April 16, 2013, after plaintiff used the restroom without asking permission, Mr. Farney treated plaintiff differently than other ASAT program participants who neglected to follow program rules. Mr. Farney followed ASAT standards, as well as his own general practice, and assigned plaintiff a 500-word essay as a learning experience. Id. at 6.

Insofar as plaintiff bases his equal protection claim on denial of re-entry into the ASAT program (Am. Compl. at 4-5), the ASAT standards, policies, and procedures state that "should [an inmate] refuse [to abide by the Behavior Contract] or sign out of treatment, or is [he is] unsatisfactorily discharged from treatment, [he] must wait 30 days from the date of discharge before [he] can request consideration for readmission." Dkt. No. 112-4 at 5. Plaintiff has not introduced evidence supporting a finding that Mr. Farney allowed another ASAT program participant to re-apply to the program without waiting the mandated thirty days. Accordingly, plaintiff has not established that Mr. Farney intentionally treated him differently from other similarly-situated persons. Scott, 739 F.Supp.2d at 362.

**2. Rational Basis**

 *10  Under the second prong of an equal protection 'class of one' claim, if a plaintiff can demonstrate that he was intentionally treated differently from other similarly-situated persons, the Court must determine if that treatment was "rationally related to a legitimate state interest." Lee, 87 F.3d at 60. [8] "In the prison context, preservation of security and discipline constitutes a legitimate penological interest.... Conduct expressly aimed at protecting prison security is 'legitimate' beyond question and is in fact 'central to all other correctional goals.' " Kimbrough v. Fischer, No. 9:13-

CV-100 (FJS/TWD), 2016 WL 660919, at *6 (N.D.N.Y. Feb. 18, 2016) (citations omitted). Mr. Farney declared that "there are at least 30 inmates per ASAT class, and the ASAT instructor is often the only facility staff member present." Farney Decl. at 5.

> If inmates were allowed to [ ] get up in the middle of the ASAT program sessions, whenever, and however often they wished, without having to ask permission first ... [it] would make it exponentially more difficult to keep track of inmates, their activity, and their location, while also monitoring what was going on with the program itself, thus creating unacceptable gaps in security and leading to potentially dangerous situations.

Id. at 4-5. Pursuant to Mr. Farney's declaration, it is clear that the ASAT policy that inmates ask permission prior to using the bathroom is aimed at ensuring prison security. Id.

[8]  Here, the undersigned concluded that plaintiff failed to demonstrate that plaintiff was intentionally treated differently from other similarly-situated persons. See subsection II.D.1. supra. However, for purposes of a complete analysis, the undersigned will perform a rational basis analysis.

Insofar as plaintiff suggests that there is no rational basis for the assigned discipline, Mr. Farney declared that "essays of [that] nature, also known as a 'learning experience,' is a standard behavioral mechanism employed in the ASAT program." Farney Decl. at 6. Plaintiff's assignment to write an essay on the importance of respecting others in the group falls within the programs goal of "group and individual counseling." Id. at 2, 6. Therefore, a rational basis exists for any difference in treatment. Thus, because plaintiff has failed to establish that Mr. Farney treated him differently than similarly-situated persons, and because a rational basis exists for the ASAT standards, policies, and procedures, it is recommended that defendant's Motion for Summary Judgment be granted.

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 60 of 78

2017 WL 8894723

Even assuming *arguendo*, that plaintiff alleged a prima facie claim of equal protection, plaintiff requested that the Court grant him injunctive relief by "restoring plaintiff to the ASAT program." Am. Compl. at 7. Plaintiff was released from prison on February 16, 2017, while his action was pending.[9] Plaintiff's amended complaint requested, in part, injunctive relief in the form of readmission to the ASAT program, however, when plaintiff was released from prison "he no longer had a continuing personal stake in the outcome of the action, and his claims were rendered moot." Khalil v. Laird, 353 Fed.Appx. 620, 621 (2d Cir. 2009) (summary order) (internal quotation marks omitted) (quoting Muhammad v. City of N.Y., 126 F.3d 119, 123 (2d Cir. 1997) ); see Pugh v. Goord, 571 F.Supp.2d 477, 489 (S.D.N.Y. 2008) ("Where a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot."); Douglas v. Hollins, 160 Fed.Appx. 55, 56 (2d Cir. 2005) (summary order) ("Because [the plaintiff] has been released from prison, his request for injunctive relief is moot."); Smith v. Fischer, 13-CV-6127-FPG, 2016 WL 3004670, at *2 (W.D.N.Y. May 23, 2016) ("It is settled in the Second Circuit that an inmate's release from prison moots his claims for declaratory and injunctive relief against the prison's officials."); Henrius v. County of Nassau, 13-CV-1192 (SJF)(SIL), 2016 WL 1171598, at *3 (E.D.N.Y. Mar. 24, 2016) (internal quotation marks omitted) (concluding that because the plaintiff was released from prison, any injunctive relief "would afford no legally cognizable benefits to him since he was no longer imprisoned within the DOC system."). Further, because plaintiff "had the same opportunity to reapply for admission to the ASAT program after his withdrawal as any other inmate in his situation would have had," he is not prevented from seeking such counseling in the future, if the he ever were to find himself incarcerated and in need of the program in the future. See Dkt. No. 112-5 ("Kelly Decl.") at 7. Therefore, even if plaintiff could establish that Mr. Farney violated his equal protection rights—a finding the undersigned does not make—his release from incarceration renders his injunctive relief in the form of re-admission to the ASAT program moot.

[9]    The DOCCS look up website provides that plaintiff was conditionally released to parole on February 16, 2017. See DOCCS LOOKUP, http://nysdoccslookup.doccs.ny.gov/ (last visited Dec. 18, 2017).

### E. ADA

**\*11** As an alternative ground to dismissal, defendant argues that plaintiff cannot establish that Mr. Farney violated his rights under the ADA. Dkt. No. 112-21 at 17-22. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "any department, agency ... or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(B). A qualified individual with a disability is defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

Id. § 12141(2). To state a claim under the ADA, an inmate must demonstrate that

> (1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity.

Clarkson v. Coughlin, 898 F.Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

Case 9:19-cv-01114-TJM-TWD    Document 19    Filed 06/26/20    Page 61 of 78

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

Under the ADA, a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable modifications ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity." 42 U.S.C. § 12131(2). A person is an individual with a disability if he has "a physical or mental impairment ... [that] substantially limits one or more of the major life activities of such individual," there is a "record of such an impairment," or the person is "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C); see also Manon v. Albany Cnty., No. 11-CV-1190 (GTS/CFH), 2012 WL 6202987, at *6 (N.D.N.Y. Oct. 9, 2012).

> To determine if an individual meets any of the above criteria, courts apply a three part test.... First, a plaintiff must show that [he or] she suffers from a physical or mental impairment. Second, the plaintiff must establish that the activity [he or] she alleges to be impaired constitutes a "major life activity." Third, the plaintiff must show that [his or] her impairment "substantially limits" the major life activity previously identified.

Smith v. Masterson, 538 F.Supp.2d 653, 657 (S.D.N.Y. 2008) (internal citations omitted); see also Manon, 2012 WL 6202987, at *7. Major life activities include, inter alia, caring for oneself, walking, standing, sitting, concentrating, and interacting with others, as well as the "operation of a major bodily function" such as the function of the bowel or bladder. 29 C.F.R. § 1630.2(i)(1)(i), (ii).

Although the functioning of the bladder statutorily constitutes a "major life activity," plaintiff has not established that he suffers from a physical or mental impairment, or that such impairment substantially limits his major life activity. See Smith, 538 F.Supp.2d at 657. Plaintiff only refers to his disability as a "medical condition that requires [him] to urinate frequently," but offers no testimony or medical records identifying a specific medical condition. Am. Compl. at 4. In determining whether a major life activity is "substantially limited," the Court must analyze: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent

or long-term impact, or expected long-term impact of or resulting from the impairment." Baerga v. Hosp. for Special Surgery, No. 97 Civ.0230 (DAB), 2003 WL 22251294, at *5 (S.D.N.Y. Sept. 30, 2003). Plaintiff's amended complaint offers little information as to the nature and severity of his alleged impairment, other than it causes him to "urinate frequently." Am. Compl. at 4. He fails to allege how long he has suffered from frequent urination, or the long-term impact of this condition. Moreover, it has been held that "the need to urinate frequently is not a disability recognized by the courts." Giles v. NBC Universal, Inc., No. 10 Civ. 7461 (DAB), 2011 WL 4376469, at *5 (S.D.N.Y. Sept. 20, 2011) (citing Lewis v. Hill, No. 97 Civ. 3213 (DAB), 2005 WL 292748, at *4 (S.D.N.Y. Feb. 8, 2005) ) (finding that the plaintiff's prostate condition, which caused frequent urination, was not "so severe as to constitute a substantial limitation ... [and] he has not met his burden to prove that he is 'disabled' within the meaning of the ADA."); see Rider v. General Motors Corp., No. 03-CV-0701C (F), 2006 WL 1520084, at *7 (W.D.N.Y. May 26, 2006) ("While plaintiff's urinary incontinence is a permanent condition and affects her on a daily basis, the impact of the condition on plaintiff's daily life is not so severe as to prevent or restrict her from doing activities that are of central importance to most people's daily lives."); Spruill v. New York City Health and Hosps. Corp., No. 06 Civ. 11362(WHP), 2008 WL 3911015, at *3 (S.D.N.Y. Aug. 25, 2008) ("Nor does [the plaintiff's] medication-induced need to urinate frequently substantially limit any major life activity."); Williams v. H.N.S. Mgmt. Co., Inc., 56 F.Supp.2d 215, 221 (D. Conn 1999) (finding that frequent urination only substantially limits a major life activity "where restrooms are not frequently accessible.").

**\*12** Even if the undersigned concluded that plaintiff constituted a "qualified individual" under the ADA, plaintiff has failed to establish that he was excluded from participation in, or denied the benefits of, the ASAT program. See Clarkson, 898 F.Supp. at 1037. The record is clear that, although plaintiff withdrew voluntarily from the program, he could request readmission. In response to plaintiff's April 18, 2013 letter requesting "help [getting] him back into the program, DOCCS Deputy Commissioner of Program Services Jeff McKoy informed plaintiff that he "may request readmission to ASAT 30 days [from his withdrawal] or earlier at the discretion of treatment staff." Dkt. No. 112-20 at 6. Mr. McKoy also told plaintiff that to apply for readmission, he "must complete and submit a 'Readmission Request for Substance Abuse Treatment' [form] to ASAT staff for review/recommendation." Id. Mr. McKoy again referred plaintiff to

Case 9:19-cv-01114-TJM-TWD   Document 19   Filed 06/26/20   Page 62 of 78

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

these requirements in response to plaintiff's April 28, 2013 letter. Id. at 7, 9. The readmission requirements are also detailed in the ASAT standards, policies, and procedures that plaintiff signed on March 26, 2013. Dkt. No. 112-4 at 5. Plaintiff does not allege, and the record does not support, that Mr. Farney prevented plaintiff from re-applying to the program.

Moreover, insofar as plaintiff attempts to establish that Mr. Farney failed to offer him a reasonable accommodation for his disability, this argument must also fail. Am. Compl. at 5. To succeed on a failure to accommodate claim, a plaintiff must, in part, demonstrate that the "defendant had notice of the disability and failed to provide such accommodation." Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir. 1995). Plaintiff does not contend, and the record does not suggest, that Mr. Farney knew of plaintiff's alleged disability and that it caused him frequent urination prior to the April 16, 2013 incident. Mr. Farney declared that plaintiff never informed him of a medical condition, nor did he submit medical documentation as to any restrictions or accommodations needed. Farney Decl. at 7-8. Therefore, because plaintiff failed to provide notice of his medical condition and any accommodation needed, he has failed to state a prima facie claim for failure to accommodate. See Lyons, 68 F.3d at 1515.

Finally, to the extent that plaintiff's complaint can be read as arguing that he was denied the benefits of the ASAT program because TAC recommended withholding three months of his good time credit, plaintiff acknowledged and signed the Program Refusal Notification, which stated that "refusal to participate in recommended programming may result in ... the loss of Good Time." Dkt. No. 112-4 at 9. Additionally, it is well-settled that "an inmate has no constitutionally protected [liberty] interest in parole[,] ... discretionary good time release[,] .... or to participation in prison programs which might expedite release." McMillan v. Perez, No. 14-CV-3854 (KMK), 2016 WL 4926202, at *5 (S.D.N.Y. Sept. 14, 2016) (internal quotation marks omitted) (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); Fifield v. Eaton, 669 F.Supp.2d 294, 297 (W.D.N.Y. 2009); Johnson v. Baker, 108 F.3d 10, 11 (2d Cir. 1997) ).

Accordingly, because plaintiff has failed to establish that he was a "qualified individual" and that he was excluded from participation in or denied access to the ASAT program, or that he was wrongfully denied a reasonable accommodation,

it is recommended that Mr. Farney's Motion for Summary Judgment on this ground be granted.

### F. Personal Involvement

As an alternative ground to dismissal, defendant contends that plaintiff has failed to establish his personal involvement in the constitutional violations. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted) ). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

**\*13**  (1) the defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted) ). [10] Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. See, e.g., Brown v. Artus, 647 F.Supp.2d 190, 200 (N.D.N.Y. 2009).

[10]     Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F.Supp.2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 Fed.Appx. 16 (2d Cir. 2012)

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

(summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F.Supp.2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster...."); D'Olimpio v. Crisafi, 718 F.Supp.2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Plaintiff contends that, as a result of his withdrawal from the ASAT program, "TAC took all available good behavior allowance (good time credit) [and] direct[ed] that [plaintiff] be held until his maximum expiration date." Am. Compl. at 4. The record is clear that TAC, not Mr. Farney, recommended withholding three months of plaintiff's good time credit. Kelly Decl. at 7-8; Dkt. No. 112-6 (detailing TAC's decision). Plaintiff has not alleged, and the record does not support, that Mr. Farney is a member of TAC, or that he in any way influenced TAC's decision. Therefore, it cannot be said that Mr. Farney was personally involved in the decision to withhold three months of good time credit from plaintiff, and, therefore, he is not liable under the Colon factors. See Thompson v. LaClair, No. 9:08-CV-0037 (FJS/DEP), 2009 WL 2762164, at *8 (N.D.N.Y. Aug. 25, 2009) (finding no personal involvement where the plaintiff's loss of good time credit was based on TAC's decision, not that of the defendant).

### G. Qualified Immunity

Mr. Farney argues that, even if plaintiff's constitutional claims are substantiated, he is entitled to qualified immunity. Dkt. No. 112-21 at 24-25. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would

be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F.Supp.2d 211, 230 (N.D.N.Y. 2002).

**\*14** Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection III.B.-F. supra. Moreover, it was objectively reasonable for Mr. Farney, abiding by ASAT standards, policies, and procedures and his twenty-four years of experience as an ASAT instructor, to counsel plaintiff following his rule violation, especially because he did not know that plaintiff allegedly suffered from a medical condition. See subsection III.D. supra. By assigning plaintiff a "learning experience" consistent with the ASAT standards, it cannot be said that Mr. Farney objectively knew he was violating plaintiff's constitutional rights because he was unaware that plaintiff suffered from an alleged medical condition that caused frequent urination. See Am. Compl. at 4. Because there is no constitutional violation, the undersigned does not reach whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F.Supp.2d at 230. Accordingly, in the alternative, it is recommended that Mr. Farney's motion on this ground be granted.

### H. Eleventh Amendment

Mr. Farney argues that he is entitled to Eleventh Amendment immunity relating to plaintiff's claims against him in his official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100, 104 S.Ct. 900. Section 1983 claims do not abrogate the Eleventh

Case 9:19-cv-01114-TJM-TWD   Document 19   Filed 06/26/20   Page 64 of 78

Hamm v. Farney, Not Reported in Fed. Supp. (2017)

2017 WL 8894723

Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

Moreover, suit against a state official in his or her official capacity is a suit against the entity that employs the official. Faird v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer in his official capacity. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Because plaintiff seeks monetary damages against Mr. Farney for acts occurring within the scope of his duties, the Eleventh Amendment bar applies. However, although plaintiff lists Mr. Farney's "official position" on his amended complaint, the Court, in deference to plaintiff's pro se status, infers that plaintiff has also brought suit against Mr. Farney in his individual capacity. See Thomas v. Calero, 824 F.Supp.2d 488, 498-99 (S.D.N.Y. 2011) ("We do not read plaintiff's allegations as [suing defendants only in their official capacities], since they appear to be intended to plead that the individual defendants were acting under color of state law, a pleading requirement for stating a claim under section 1983."). However, to the extent that plaintiff asserts claims against Mr. Farney in his official capacity, it is recommended that defendant's motion be granted, as such claims are barred by the Eleventh Amendment.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment (Dkt. No. 112) be **GRANTED**, and plaintiff's amended complaint (Dkt. No. 51) be **DISMISSED in its entirety with prejudice**; and it is

**\*15 ORDERED**, that the Clerk of the Court correct the caption on the docket to reflect John Farney as the proper defendant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [11]

---

[11]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8894723

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Hamm v. Farney, Not Reported in Fed. Supp. (2018)

2018 WL 922149

2018 WL 922149
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alan HAMM, Plaintiff,
v.
John FARNEY, Defendant.

9:13-cv-1302 (BKS/CFH)
|
Signed 02/16/2018

**Attorneys and Law Firms**

Alan Hamm, Brooklyn, NY 11203, pro se.

Keith J. Starlin, Esq., Hon. Eric T. Schneiderman, Office of New York State Attorney General, The Capitol, Albany, NY 12224, Attorney for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**\*1** Plaintiff Alan Hamm, a former New York State inmate, commenced this civil rights action asserting claims under 42 U.S.C. § 1983 arising out of his incarceration at Gouverneur Correctional Facility. (Dkt. No. 51). On April 7, 2017, Defendant John Farney filed a motion for summary judgment under Fed. R. Civ. P. 56, seeking dismissal of the complaint with prejudice. (Dkt. No. 112). Plaintiff did not file a response to the motion despite being given two extensions of time to do so. (Dkt. Nos. 117, 121). On November 6, 2017, mail that had been sent from the Court to Plaintiff at his last known address, a men's shelter in Brooklyn, [1] was returned to the Court as "not deliverable as addressed, unable to forward." (Dkt. No. 122).

[1] On October 24, 2017, in a phone call with the Clerk's Office, Plaintiff had confirmed that the address at the men's shelter was still the most current address for him.

This matter was referred to United States Magistrate Judge Christian F. Hummel who, on December 22, 2017, issued a Report-Recommendation and Order recommending that Defendant's motion for summary judgment be granted and that Plaintiff's complaint be dismissed in its entirety with

prejudice. (Dkt. No. 123). Magistrate Judge Hummel advised the parties that, under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (Dkt. No. 123, at 34-35). The Report and Recommendation was mailed to Plaintiff at his last known address, via regular and certified mail, but no confirmation of receipt has been received. (Dkt. No. 124). On January 24, 2018 the Court issued a text order directing Plaintiff to confirm his mailing address with the Court by February 7, 2018, and extending the deadline for objections to the Report and Recommendation until February 7, 2018. No objections to the Report-Recommendation have been filed.

Local Rule 10.1(c)(2) states, in relevant part: "All ... pro se litigants must immediately notify the Court of any change of address. Parties must file the notice of change of address with the Clerk and serve the same on all other parties to the action. The notice must identify each and every action to which the address shall apply." N.D.N.Y. L.R. 10.1(c)(2); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action."). "For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes." *Hill v. Donelli*, 05-cv-1245, 2008 WL 4663364, at \*1, 2008 U.S. Dist. LEXIS 110595 (N.D.N.Y. Oct. 20, 2008). In *Dansby v. Albany County Correctional Facility Staff*, the court observed:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be

**Hamm v. Farney, Not Reported in Fed. Supp. (2018)**

Case 9:19-cv-01114-TJM-TWD Document 19 Filed 06/26/20 Page 66 of 78

2018 WL 922149

reflected by those inquiries if made in writing.

**\*2** No. 95-cv-1525, 1996 WL 172699, at \*1, 1996 U.S. Dist. LEXIS 4782 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King*, No. 84-3310, slip op. at 4, 759 F.2d 19 (5th Cir. May 19, 1985)).

Plaintiff appears to have understood his obligation to keep the Court apprised of his current address because he notified the Court three times, during the course of this litigation, of his changes of address. (Dkt. Nos. 110, 114, 116). On January 24, 2018, the Court provided Plaintiff an additional fourteen days to confirm his mailing address and file objections, if any, to the Report-Recommendation. Plaintiff has not responded. As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F.Supp.3d 223, 228–29 (N.D.N.Y.

2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 123) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendant's motion for summary judgement (Dkt. No. 112) is **GRANTED** and Plaintiff's amended complaint is **DISMISSED in its entirety with prejudice**; and it is further

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 922149

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2870300
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Roberto CASTINEIRAS, Plaintiff,

v.

A. HELMS, Defendant.

9:17-CV-1084 (BKS/ATB)
|
Signed 06/06/2019

**Attorneys and Law Firms**

ROBERTO CASTINEIRAS, Plaintiff, pro se

AIMEE COWAN, Asst. Attorney General, for defendants.

## REPORT and RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Plaintiff has filed this civil rights complaint alleging that on August 21, 2017, at Upstate Correctional Facility, defendant Helms used excessive force against him in the course of extracting plaintiff from his cell. (Complaint ("Compl.") ¶ 6, Facts). Plaintiff originally named two defendants: Corrections Officer ("CO") A. Helms, and "Jane Doe," a nurse on duty at the time of the incident. (Compl. at 1). On December 19, 2017, after initial review of the complaint, Judge Sannes dismissed the complaint against defendant Jane Doe. (Dkt. No. 9).

Presently before the court, is a motion for summary judgment filed by defendant Helms, arguing that plaintiff has failed to exhaust his administrative remedies. In the alternative, defendant argues that plaintiff's Eighth Amendment claim may be dismissed on the merits, and that defendant is entitled to qualified immunity. (Dkt. No. 24). Plaintiff has responded in opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 26, 27). For the following reasons, this court agrees that plaintiff has failed to exhaust his administrative remedies and will recommend that the defendant's motion for summary judgment be granted.

## DISCUSSION

### I. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin*, 467 F.3d at 272.

### II. Exhaustion of Administrative Remedies

#### 1. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if

they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*2** The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

There is a special section for complaints of "harassment." *Id.* § 701.8. Harassment grievances are defined in another section of the regulations as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an inmate." *Id.* § 701.2(e). Based on this definition, section 701.8 has been found applicable to claims of excessive force by staff. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *7 n.7 (S.D.N.Y. Sept. 28, 2018) (citing *Torres v. Carry*, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009)).

Complaints of harassment are handled by an ***expedited*** procedure which provides that such grievances are forwarded directly to the superintendent of the facility, [1] after which the inmate must appeal any negative determination to the CORC by filing a form within seven calendar days of the inmate's receipt of the Superintendent's response. *Id.* §§ 701.8(h) & (i), 701.5. The regulations then provide that "unless otherwise

stipulated in this section, all procedures, rights, and duties pertaining to the processing of other grievances as set forth in section 701.5 of this Part shall be followed." *Id.* § 701.8(i). Thus, if a procedure is not described in 701.8, the inmate must refer to section 701.5. [2]

[1] The regulation states that "[a]llegations of employee harassment are ***of particular concern to the administrators of department facilities.***" 7 N.Y.C.R.R. § 701.8 (emphasis added).

[2] The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*3** However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S. Ct. at 1857. " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, 656 Fed.Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, —— U.S. ——, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, —— U.S. ——, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 Fed.Appx. at 580. An administrative procedure is "unavailable" when

(1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross,* —— U.S. ——, 136 S. Ct. at 1859-60).

In *Ross,* the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross,* —— U.S. ——, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860. Thus, if a plaintiff fails to exhaust his administrative remedies, the court must consider whether those remedies were "available" to him.

In *Williams v. Priatno,* 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross,* after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a Department of Corrections and Community Services ("DOCCS") regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)).

The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed ... [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126.[3] *See also Medina v. Napoli,* 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

[3]     My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin,* No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted,* 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

**2. Application**

**\*4** In this case, defendant argues that plaintiff failed to exhaust his administrative remedies because he failed to appeal the Superintendent's denial of his grievance to the CORC, and the administrative remedy was "available" to him. (Def.'s Mem. of Law at 3-5) (Dkt. No. 24-9). Defendant also argues that plaintiff failed to specifically identify defendant Helms in his grievance as one of the officers who actually struck plaintiff.[4] (*Id.* at 4). This court need not reach defendant's last argument regarding exhaustion because there are at least two other reasons why plaintiff failed to exhaust his administrative remedies as discussed below, the first of which was not raised by the defendant.

[4]     Defendant argues that the grievance states only that defendant Helms verbally threatened plaintiff after the excessive force incident. (Def.'s Mem. of Law at 4).

Plaintiff attached his grievance to the complaint in this federal action. (Compl. at CM/ECF p.7). The grievance is dated "9/21/17," and it was received by the Grievance Committee and given Grievance No. UST-61853-17 on "9/22/17." (*Id.*) Plaintiff's federal complaint was also signed "9/21/17," and it was received by the court on "9/28/17." (Compl. at CM/ECF p.6 & Dkt. No. 1 *generally*). If plaintiff signed his administrative grievance and his federal complaint on the same day and mailed the federal complaint to the court,

it is impossible that plaintiff could have exhausted his administrative remedies before he filed his federal action. In fact, in the section of the form-complaint which asks the plaintiff "What was the final result of your grievance?", plaintiff's answer was: "[it] is being in investigation under Code 49 harassment/misconduct."[5] (Compl. at CM/ECF p.3).

[5] Exhaustion is an affirmative defense. Thus, even though it seems clear from the face of the complaint that plaintiff's remedies were not exhausted, in an abundance of caution, the complaint was allowed to proceed past initial review.

A civil rights claim must be exhausted by the grievance process, which requires the completion of the three-tiered process, *before* an action asserting that claim may be filed. *See*, e.g., *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015), *Rep't Rec., adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015); *See also Klein v. Fischer*, No. 13-CV-0437, 2015 WL 5174031, at *19 (N.D.N.Y. Sept. 2, 2015) ("a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.").

The court will also examine whether plaintiff exhausted his administrative remedies *after* filing this action. If plaintiff had done so, the federal complaint would still have to be dismissed, but the plaintiff would have been able to re-file the federal complaint immediately because his remedies would already have been exhausted. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Morales v. Mackalm*, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion). If plaintiff did not exhaust his remedies during the pendency of this action, the dismissal may still be without prejudice, but plaintiff will have to attempt to exhaust his administrative remedies prior to refiling.

In this case, the parties dispute whether plaintiff completed the exhaustion requirement during the pendency of this action. Defendant Helms argues that plaintiff did not appeal the denial of his grievance to the CORC, and thus never completed the administrative grievance process for his claim at all. (Dkt. Nos. 24-1; 24-9). Plaintiff argues that he did appeal to the CORC, but did not keep copies of any of the relevant documents. The parties agree that plaintiff filed Grievance UST-61853-17 following the alleged August 21, 2017 incident. (Cowen Dec. Ex. A, at 2). Because plaintiff's

grievance involved allegations of employee harassment, it was forwarded directly to Upstate's Superintendent for review and response. (Cowen Decl. Ex. A at 7). Plaintiff's grievance was subsequently denied by the Superintendent. (Cowen Dec. Ex. A, at 3). However, the parties disagree as to whether plaintiff appealed the Superintendent's decision to the CORC. (Cowen Dec. Ex. A, at 3; Dkt. No. 24 at 7-9; Dkt. No. 24-5 at 32-33).

 **\*5** Defendant has filed the Declaration of Rachel Seguin, the Assistant Director of the DOCCS IGP and custodian of records maintained by the CORC. (Seguin Decl. ¶¶ 1-2, 7). Assistant Director Seguin reviewed the CORC records, searching for any appeals filed by plaintiff with the CORC and found no grievance appeals by plaintiff. (Seguin Decl. ¶¶ 7-9; Ex. A).

In his deposition, plaintiff claims to have filed his appeal to the CORC and claims that the CORC issued a decision denying his grievance. (Pl.'s Dep. at 32-33). Plaintiff's testimony regarding the appeal was vague. *Id.* Plaintiff has been unable to produce the alleged denial of appeal by the CORC, although he claims to have received such a denial, and has failed to produce any other evidence that the appeal was filed. Plaintiff testified that he did not keep a copy of his appeal or of the CORC's decision. (*Id.* at 32). Although plaintiff responded to the defendant's summary judgment motion, he failed to address the exhaustion issue. (See Dkt. No. 26).[6] Thus, he has failed to address Assistant Director Seguin's sworn statement that there is no record of plaintiff having filed an appeal with CORC regarding any alleged misconduct by defendant Helms.

[6] Plaintiff argues in his Response to defendant's motion for summary judgment that he is entitled to an appointment of counsel. (Dkt. No. 26). Requests of counsel must be made by a Motion for Appointment of Counsel in compliance with the Northern District of New York's local rules. Plaintiff is aware of this requirement as he has previously moved to appoint counsel and the court has denied his motion. (Dkt. Nos. 18, 20).

Unlike the plaintiff in *Williams*, this plaintiff does not argue that administrative remedies were unavailable to him. Rather, plaintiff claims that he completed all the required steps to exhaust his administrative remedies. He alleges that he did not keep the relevant documents. It is undisputed that plaintiff filed a grievance and received a decision from the

Superintendent denying his claim. Because plaintiff has failed to claim that administrative remedies were unavailable to him, any recognized exceptions to the exhaustion of administrative remedies requirement are not relevant to the court's analysis. *See Ross*, 136 S.Ct. at 1853-54.

When a plaintiff fails to exhaust his administrative remedies, the court must dismiss the action without prejudice so that the plaintiff may complete the exhaustion process and re-file his action, unless the time permitted for filing a grievance or appeal has finally expired. *See Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (upholding dismissal of a civil rights action with prejudice where the time permitted for filing a grievance had expired because "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies") (citation omitted).

In this case, the Superintendent's decision was dated October 27, 2017, and the bottom of the document contains an "Appeal Statement," informing the plaintiff that he had "seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C." (Def.'s Ex. A at 3). *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i). The text associated with the asterisk above states that "*An exception to this time limit may be requested under Directive #4040, section 701.6(g)." (*Id.*) This document is Form # 2133. (*Id.*) The appeal section of the form is blank,[7] and the regulations specifically provide that "If the grievant or any direct party wishes to appeal to the CORC, he or she *must complete and sign form #2133* and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." 7 N.Y.C.R.R. § 701.5(d)(1)(i) (emphasis added). This section of the regulation further states that "an exception to this appeal time limit may be approved by the IGP supervisor under section 701.6(g) of this Part." *Id.* However, section 701.6(g) provides that "an exception to this time limit may not be granted if the request was made more than 45 days after an alleged occurrence."

[7]    This further supports the defendant's assertion that plaintiff did not, in fact, appeal the Superintendent's denial of his grievance to the CORC.

**\*6**  Thus, plaintiff may not return to exhaust his administrative remedies as against defendant Helms because, although he could have requested an exception to the seven-day time limit for appealing to the CORC within 45 days of the occurrence of the incident, that time limit has long since expired, and there appear to be no exceptions to the 45 day limit in the regulations. Because plaintiff may not return to exhaust his administrative remedies as against defendant Helms, I must recommend dismissal with prejudice as against defendant Helms.

In his response to defendant's motion, plaintiff references another investigation surrounding the events of August 21, 2017 and argues that his Eighth Amendment claim should survive summary judgment, even if defendant Helms is granted a "partial" summary judgment on his exhaustion argument. (Dkt. No. 26). According to plaintiff, an investigation conducted by the Office of Special Investigations ("OSI") established that the *nurse* on duty on the day of the incident was guilty of abusive behavior. (Dkt. No. 26).

A copy of the investigative report is attached to defense counsel's affidavit as Exhibit B. The OSI report referenced plaintiff and another inmate, who complained about an unrelated, but similar incident involving the nurse. (Cowan Decl. Ex. B). The OSI investigated the August 21, 2017 incident. (Cowan Dec. Ex. B). The investigation was conducted to look into allegations made by plaintiff, as well as additional allegations by a different inmate at Upstate Correctional Facility, against the nurse on duty during the August 21, 2017 incident (Nurse Marla Travers). (*Id.*) However, even assuming that this investigation sufficed to exhaust plaintiff's claims against Nurse Travers,[8] all claims against "Jane Doe Nurse" were dismissed from this case *sua sponte* by the Judge Sannes. (Dkt. No. 9).[9]

[8]    Normally, if plaintiff had filed directly with the Inspector General or OSI, such a complaint would not be sufficient for exhaustion purposes. *Smith v. Kelly*, 985 F. Supp. 2d 275, 285 & n.16 (N.D.N.Y. 2013) ("The Court notes that there is no exhaustion where an inmate complains directly to the Inspector General (i.e., instead of complaining to the superintendent and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d] ), the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that finding to CORC.") In this case, it is clear from the OSI report that the investigation was requested by the Superintendent

on September 19, 2017, but was not finally decided until June 5, 2018. (Cowen Decl. Ex. B at 1, 4). There would have been no need to appeal the OSI finding because it was in plaintiff's favor, and Nurse Travers resigned from her position on April 18, 2018. (Cowen Decl. Ex. B at 3). However, it appears that whatever grievance or complaint prompted the Superintendent to request an OSI investigation, it must have been based on different facts than the grievance that plaintiff attached to his federal complaint because the Superintendent's response to Grievance UST-61853-17 was a *denial* on October 27, 2017, including a statement that "no misconduct by staff was found." (Cowen Decl. Ex. A at CM/ECF p.3). Plaintiff would have been required to appeal that denial in order to exhaust his claims against defendant Helms.

9      Plaintiff had the opportunity to amend his complaint to add the nurse in question as a party. He clearly knew the nurse's name at the time of the OSI investigation, but never filed an amended complaint with the court. The complaint as to Nurse "Doe" was dismissed without prejudice.

*7 In any event, the report states that the investigation was "assigned on September 28, 2017, and Investigator Ryan Graziano signed the completed OSI Report on May 8, 2018, long after plaintiff filed this federal complaint." Thus, notwithstanding the OSI investigation, which focused only on the nurse, plaintiff still failed to exhaust his administrative remedies *prior to* filing this federal complaint. The complaint still remains dismissed without prejudice as to the Jane Doe nurse.

### III. **Additional Discovery**

#### 1. Legal Standards

Pursuant to Fed. R. Civ. P. 56(f), a party opposing a motion for summary judgment based on insufficient discovery must file an affidavit describing: (1) "the nature of the uncompleted discovery;" (2) "how the facts sought are reasonably expected to create a genuine issue of material fact;" (3) "what efforts the affiant has made to obtain those facts" and; (4) "why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); see also *Brunson v. Jonathan*, 677 F. Supp. 2d 640, 641 (W.D.N.Y. 2010).

#### 2. Application

In his response to defendant's motion, plaintiff also argues that he should be allowed to conduct further discovery in this matter in the form of depositions and interrogatories. (Dkt. No. 26). Plaintiff has not met the requirements for additional discovery under Rule 56(f). Plaintiff's response to defendant's motion merely states that discovery "in the form of depositions" and "interrogatories" would be "instrumental" to establish defendant's culpability. Plaintiff's vague and conclusory statement fails to demonstrate how his ability to respond to defendant's motion for summary judgment was impaired by his lack of discovery or what documents he wishes to obtain that would be material to the exhaustion or any substantive issue.

Additionally, in defendant's reply, defense counsel asserts that she complied with the Court's Mandatory Pretrial Discovery order and forwarded the required discovery material to plaintiff. (Dkt. No. 27). Further, defendant notes that plaintiff had six months to conduct discovery after defendant filed his answer to plaintiff's complaint on February 6, 2018 (Dkt. No. 16). The deadline for discovery did not expire until August 7, 2018. (Dkt. No. 17). Moreover, defendant's reply states that there is no indication that plaintiff ever demanded any further discovery or an extension of the discovery deadline. Thus, plaintiff has not met the requirements of Rule 56(f).

### IV. **Conclusion**

Based upon the complaint itself, the grievance documents, and Assistant Director Seguin's declarations, plaintiff has failed to raise an issue of fact as to whether, prior to the initiation of this action, he properly filed his grievance and/or appealed the grievance against defendant Helms to the CORC as required by the IGP. *See*, e.g., *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.")" (internal quotation marks and emphasis omitted)).

The court also concludes that there are no issues of fact material to whether plaintiff has ever exhausted his administrative remedies with respect to the claim against defendant Helms. No reasonable fact finder could conclude that plaintiff pursued an appeal to the CORC after he filed this action or that he could still pursue such an appeal within the applicable deadlines. Accordingly, I recommend that defendant's motion be granted, and that plaintiff's complaint be dismissed with prejudice based on his failure to exhaust available administrative remedies prior to commencing this

2019 WL 2870300

action and thereafter, though the expiration of the applicable deadlines to do so.

**\*8  WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS TO DEFENDANT HELMS**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**All Citations**

Slip Copy, 2019 WL 2870300

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jonathan MENA, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

 **\*1** Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]

[1]     The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that

district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-hour period that he was held in the cell. (*See id.* at 4.) Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

**\*2** As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a number of his substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

### II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that

Case 9:19-cv-01114-TJM-TWD   Document 19   Filed 06/26/20   Page 76 of 78

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).*

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009)* (citing *Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998)*). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y., No. 04-cv-6987 (GEL), 2006 WL 1292076, at \*3 (S.D.N.Y. May 9, 2006); see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund, No. 03-cv-7421 (KMK), 2005 WL 1026330, at \*1 n.2 (S.D.N.Y. May 3, 2005).* Even so, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz, 258 F.3d at 73,* and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).*

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz, 258 F.3d at 73.* In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

### III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake, 136 S. Ct.*

1850, 1857 (2016); *see also Woodford v. Ngo, 548 U.S. 81, 84 (2006)* (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera, No. 13-cv-7054 (RJS), 2015 WL 3999180, at \*3 (S.D.N.Y. June 29, 2015); accord Johnson v. N.Y.C. Dep't of Corr., No. 13-cv-6799 (CM), 2014 WL 2800753, at \*6 (S.D.N.Y. June 16, 2014)* ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days[,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp., No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at \*7 (S.D.N.Y. Mar. 1, 2005)* ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at \*8 (S.D.N.Y. Jan. 24, 2002)* ("Thus, even if [p]laintiff received no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross, 136 S. Ct. at 1862* ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so,

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

the Supreme Court expressly rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ____, ____, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams*, 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled"

that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin*, 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly appeal to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D)(9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross*, 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested,

that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g., Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

[2]    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

### IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3948100

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.